Bob HAMMERSCHMIDT, Appellant,

v.

BOONE COUNTY, Missouri,
etc., et al., Respondents.

No. 76607.

Supreme Court of Missouri,
En Banc.

March 17, 1994.

Thomas M. Schneider, Columbia, for appellant.

John L. Patton, Asst. Pros. Atty., Boone County, Columbia, for respondents.

Don G. Busch, Springfield, amicus Springfield Chamber of Commerce.

Jeremiah W. (Jay) Nixon, Atty. Gen., John A. Christiansen, Asst. Atty. Gen., Jefferson City, for amicus Mo. Atty. Gen.

ROBERTSON, Judge.

In *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824 (Mo. banc 1990), this Court enjoined the Secretary of State of Missouri from placing an initiative before the voters that purported to "reorganize the legislature and, at the same time, impose constitutional ethical restrictions on officers, officials and employees of the legislative and executive departments." *Id.* at 831. The Court rested its holding on the constitutional limitation the people imposed on themselves by prohibiting an initiative petition from containing "more than one subject and matters properly connected therewith." Mo. Const. art. III, § 50. In this case, we consider whether House Committee Substitute for House Bills 551 and 552 (H.C.S.H.B.s 551 and 552), enacted by the 87th General Assembly, First Regular Session (1993 Laws of Mo. ——) (West's No. 102, 1993 Vernon's Missouri Legislative Service No. 4, 668–676), violates the constitution-

al limitation the people imposed on the legislature that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title...." Mo. Const. art. III, § 23.

The circuit court found the law constitutional and refused to enjoin Boone County from proceeding to an election under the H.C.S.H.B.s 551 and 552. This Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3. The judgment of the circuit court is reversed and the cause is remanded for entry of a permanent injunction enjoining Boone County from proceeding with an election under section 2 of House Committee Substitute for House Bills 551 and 552.

I.

On January 20, 1993, two members of the House of Representatives introduced House Bills 551 and 552 as separate items of legislation. House Bill 551 permitted voter registration by mail and was entitled, "An Act To repeal section 115.159, RSMo 1986, relating to elections, and to enact in lieu thereof one new section relating to the same subject." House Bill 552 amended "The Mail Ballot Election Act" and bore the title: "An Act To repeal sections 115.652 and 115.660, RSMo Supp.1992, relating to elections, and to enact in lieu thereof two new sections relating to the same subject." The Speaker referred both bills to the House Elections Committee. That committee conducted hearings, combined the bills into a single piece of legislation, and reported House Committee Substitute for House Bills 551 and 552 to the full House of Representatives with a "do pass" recommendation.

On March 1, 1993, the full House took up H.C.S.H.B.s 551 and 552. On the House floor, another representative offered an amendment containing seven subsections that, among other things, provided that "any county of the first classification which has a population of more than one hundred thousand inhabitants but less than two hundred thousand inhabitants[1] and adjoins no other

---

1. As approved H.C.S.H.B.s 551 and 552 authorizes Boone, Clay and Jefferson Counties to adopt a county constitution. The General Assembly passed and the governor approved two

other bills permitting certain counties to adopt county constitutions. Senate Bill 88 (1993 Laws of Mo. ——) (West's No. 152, 1993 Vernon's Missouri Legislative Service No. 5, 1230–1259),

county of the first classification may adopt an alternative form of government and frame a county constitution." The House approved the amendment and attached it to the bill as section 2. The new title of the bill read: "An Act To repeal section 115.159, RSMo 1986, and sections 115.562 and 115.660, RSMo Supp.1992, relating to elections, and to enact in lieu thereof five new sections relating to the same subject."

On March 3, 1993, the bill was read for the third time and passed the House as amended. The Senate adopted the bill on May 4, 1993, with amendments of its own. After conference, the House and Senate agreed to some of the Senate amendments. The final bill amended laws relating to election procedures, changed filing procedures for candidates for health center trustees, authorized specified counties to adopt county constitutions, and adopted procedures for reimbursement of expenses of employees of governmental entities. The bill's new title read: "An Act To repeal sections 115.159, 115.283, 115.291 and 205.041, RSMo 1986, and sections 115.123, 115.135, 115.652 and 115.660, RSMo Supp.1992, relating to elections, and to enact in lieu thereof eleven new sections relating to the same subject." The bill was finally passed on May 11, 1993. The governor approved the bill on June 14, 1993. It took effect on August 28, 1993. The provisions of H.C.S.H.B.s 551 and 552 (and S.B. 67

and S.B. 88, see footnote 1, supra) relating to the framing of county constitutions are combined and codified at Sections 66.700 to 66.710, RSMo Supp.1993.

On November 16, 1993, the Boone County Commission adopted an order calling an election for April 5, 1994, to permit the voters of Boone County to authorize the appointment of a county constitution framing commission for Boone County. The county commission's order does not claim authority under Sections 66.700, et seq., but instead purports to present to the voters the question whether Boone County should begin the process of framing a county constitution "[p]ursuant to ... the authority vested in the County Commission of Boone County, Missouri under Section 2 of House Committee Substitute for House Bills 551 and 552."

Bob Hammerschmidt is a resident and taxpayer of Boone County. He challenges the constitutionality of the county commission's order, claiming the commission has no authority to form a county constitution because the legislation purporting to grant that authority violates several provisions of the Missouri Constitution. Hammerschmidt seeks a permanent injunction against the county commission proceeding with its planned election. He claims, among other things, that H.C.S.H.B.s 551 and 552 violates article III,

is entitled "An Act To repeal [43] sections ... relating to the judicial system, and to enact in lieu thereof fifty new sections relating to the same subject...." and permits

> any county of the first classification which contains a city with a population of one hundred thousand or more inhabitants which adjoins no other county of the first classification, and any county which has a population of less than two hundred thousand and adjoins any county with a population of nine hundred thousand or more inhabitants, and any county of the first classification of a population of at least one hundred thousand but less than one hundred twenty thousand [inhabitants] ...

to frame a county constitution. The quoted portion of S.B. 88 applies to Boone, Greene, Jefferson and Franklin Counties. The bill includes with the county constitution authorization, among other things, amendments to the State Legal Expense Fund law, changed procedures for voter registration, amendments to laws relating to juveniles, amendments to the probate code, and laws relating to municipal judges.

Senate Bill 67 (1993 Laws of Mo. ——) (West's No. 147, 1993 Vernon's Missouri Legislative Service No. 4, 1175–1178), bears the amorphous title "AN ACT relating to the operation of certain governmental units" and adopts the "Drug–Free Public Work Force Act" together with authorization for

> any county of the first classification which contains a city with a population of one hundred thousand or more inhabitants which adjoins no other county of the first classification and any county which has a population of less than one hundred thousand inhabitants and adjoins any county with a population of nine hundred thousand or more inhabitants, and any county of the first classification with a population of at least one hundred thousand inhabitants but less than one hundred twenty thousand [inhabitants]

to form a county constitution. The quoted portion of S.B. 67 applies only to Boone, Greene and Franklin Counties.

section 23 of the Constitution in that the bill contains more than one subject.[2]

The trial court heard the matter on stipulated facts, determined that H.C.S.H.B.s 551 and 552 did not violate the Constitution in any respect and sustained Boone County's motion for summary judgment. Hammerschmidt appealed.

## II.

### A.

Article III, section 23, is one of several procedural limitations imposed by the people through the Constitution over legislative action. It provides with exceptions not pertinent here: "No bill shall contain more than one subject which shall be clearly expressed in its title." A similar provision has appeared in every Missouri Constitution since 1865. *See* Mo. Const. art. IV, § XXXII (1865). ("No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title.")

The constitutional prohibition against bills containing more than one subject is a corollary to the constitutional requirement that "no bill shall be amended in its passage through either house as to change its original purpose." Mo. Const. art. III, § 21. Together, these constitutional provisions serve "to facilitate orderly legislative procedure. By limiting each bill to a single subject [and requiring that amendments not change a

bill's original purpose], the issues presented by each bill can be better grasped and more intelligently discussed." Ruud, "No Law Shall Embrace More Than One Subject", 42 Minn.L.Rev. 389, 391 (1958).

A second purpose of article III, section 23, is to prevent "logrolling"—the practice of combining a number of unrelated amendments in a bill, none of which alone could command a majority, but which, taken together, combine the votes of a sufficient number of legislators having a vital interest in one portion of the amended bill to muster a majority for its entirety. *City of St. Louis v. Tiefel*, 42 Mo. 578, 590 (1868); *State v. Miller*, 45 Mo. 495, 498 (1870). The prevention of logrolling is essentially the same rationale as that employed by the Court in *Missourians to Protect the Initiative.* Speaking of the similar constitutional provision applicable to the initiative process, the Court said: "The prohibition is intended to discourage placing voters [legislators] in the position of having to vote for some matter which they do not support in order to enact that which they earnestly support." *Id.*, 799 S.W.2d at 830.

Third, the constitutional provision serves to defeat surprise within the legislative process. It prohibits a clever legislator from taking advantage of his or her unsuspecting colleagues by surreptitiously inserting unrelated amendments into the body of a pending bill. *State ex rel. Normandy School Dist. of*

---

**2.** Hammerschmidt also challenges the title to H.C.S.H.B.s 551 and 552. Because we decide the case on the single subject prohibition, we need not address appellant's claim that the title to the bill violates article III, section 23. It is clear, nevertheless, that section 23 contains two, separate procedural limitations on the legislature—the first prohibiting a bill containing more than one subject and the second requiring that the title to the bill clearly express that single subject. In considering challenges under section 23, this Court has sometimes combined the two limitations for analytical purposes. *See State ex rel. Hixon v. Schofield*, 41 Mo. 39, 41 (1867) ("The only subject embraced or expressed in the title is to provide for appeals in contested election cases; it can then only be valid so far as pertains to appeals arising out of such cases, and the section which attempts to give the right of appeal in all other civil cases is void and of no effect."); *State ex rel. Fire Dist. of Lemay v. Smith*, 353 Mo. 807, 184 S.W.2d 593, 596 (banc

1945) ("Where the title of an act descends to particulars, the particulars stated ordinarily become the subject of the act...." Where the title of a bill describes specifically the establishment and incorporation of fire districts, provision prohibiting any city or village from annexing any part of a fire district is void as outside the title); *State ex rel. Normandy School Dist. v. Small*, 356 S.W.2d 864, 870 (Mo. banc 1962) (An act providing for the formation of junior college districts cannot also contain provisions authorizing school districts to convey surplus property without violating Constitution); and *St. Louis County Water Co. v. Public Service Commission*, 579 S.W.2d 633, 636 (Mo.App.1979) (Bill entitled "An Act relating to the protection and safety of the public by providing notices to operators of underground facilities through regulation of demolition, excavation, and blasting" cannot also impose a duty in public utilities "fully" to maintain easement property which the utility does not own, without violating the Constitution.)

*St. Louis County v. Small*, 356 S.W.2d 864, 868 (Mo. banc 1962).

Fourth, article III, section 23, is designed to assure that the people are fairly apprised, "through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered in order that they have [an] opportunity of being heard thereon...." *Small*, 356 S.W.2d at 868.

Finally, article IV, section 26, permits the governor a line item veto of those portions of appropriations bills with which the chief executive disagrees. The governor's line item veto over appropriations exists precisely because the Constitution expressly permits the General Assembly to include multiple subjects in appropriation bills. Mo. Const. art. III, § 23. Because the governor may not employ a line item veto over legislation generally, the effect of the Constitution's single subject rule is to prevent the legislature from forcing the governor into a take-it-or-leave-it choice when a bill addresses one subject in an odious manner and another subject in a way the governor finds meritorious. Thus, by limiting the subjects a bill may address to one, the Constitution maintains appropriate checks by the governor over legislative action and effectively provides a line item analog for general legislation. W. Popkin, Materials on Legislation: Political Language and the Political Process, 204 (1993).

**B.**

Article III, section 23, is mandatory, not directory. *Miller*, 45 Mo. at 498. Nevertheless, an act of the legislature approved by the governor carries with it a strong presumption of constitutionality. *Westin Crown Plaza Hotel Co. v. King*, 664 S.W.2d 2, 5 (Mo. banc 1984). This Court will resolve doubts in favor of the procedural and substantive validity of an act of the legislature. *Id.* Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored; we ascribe to the General Assembly the same good and praiseworthy motivations as inform our decision-making processes. Therefore, this Court interprets procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act clearly and undoubtedly violates the constitutional limitation. Since the single subject rule first appeared in a Missouri Constitution, this Court has consistently attempted to avoid an interpretation of the Constitution that will "limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law." *Miller*, 45 Mo. at 497.

Consistent with these rules of construction, the words "one subject" must be broadly read, but not so broadly that the phrase becomes meaningless. To that end, this Court's test for determining whether a bill violates the single subject requirement of article III, section 23, has remained virtually the same since 1869. So long as "the matter is germane, connected and congruous," the law does not violate the single subject rule. *State v. Mathews*, 44 Mo. 523, 527 (1869). *Cf. Westin Crown Plaza Hotel*, 664 S.W.2d at 6. (The test to determine if "a bill contains more than one subject is whether all provisions of the bill fairly relate to the same subject, have a natural connection therewith or are incidents or means to accomplish its purpose.") From these consistent precedents we conclude that a "subject" within the meaning of article III, section 23, includes all matters that fall within or reasonably relate to the general core purpose of the proposed legislation. To the extent the bill's original purpose is properly expressed in the title to the bill, we need not look beyond the title to determine the bill's subject.[3]

3. We assume for purposes of this discussion that the title of the bill adopted by the legislature will meet the constitutional requirement that the title "clearly" express the subject of the bill. Mo. Const. art. III, § 23. Amorphous titles that are too broad to inform the public and the legislature of the subject of the bill present serious, but different, constitutional problems than are before the Court in this case.

Where the challenge to a law is not to its title but to the number of subjects it contains and the bill's title fails to express the subject of the bill with reasonable precision, we look to the Constitution as a whole.

The constitution is divided into separate articles.... The organization of the constitution creates a presumption that matters relating to separate subjects therein described should ...

## C.

■ As finally passed, H.C.S.H.B.s 551 and 552 bore the title "An Act To repeal sections . . . relating to elections, and to enact in lieu thereof eleven new sections relating to the same subject." The original purpose of the bill—its single subject core—was to amend laws relating to elections. This conclusion is supported by the official records of the House of Representatives. The House Journal described the conference committee report version of the bill presented to the legislators on the day of its passage as "relating to voter registration by mail." Journal of the House, Eighty–Seventh General Assembly, First Regular Session, Seventy–First Day—Tuesday, May 11, 1993, 2368.

It is true that the amendment added to the bill as section 2 contained provisions requiring voter approval of a proposition through an election. Nevertheless, the subject of the amendment—*its raison d'etre*—was to authorize a new form of county governance previously unknown in Missouri. The election provisions contained in the amendment served no purpose beyond furthering the adoption of this new form of county governance.

Applying *Westin Crown Plaza Hotel,* we conclude that the bill sent by the legislature to the governor contained two subjects. The amendment authorizing a county to adopt a county constitution does not fairly relate to elections, nor does it have a natural connection to that subject. Further, provisions of a bill vesting authority in counties to adopt a new form of government are not necessary incidents nor do they provide a means to accomplish the purposes of a bill to amend laws "relating to elections." We hold that H.C.S.H.B.s 551 and 552 violate article III, section 23.

## D.

■ The question remains whether the entire bill is unconstitutional or whether the

unconstitutional parts may be severed. Under the usual circumstances, this Court bears an obligation to sever unconstitutional provisions of a statute unless

the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Section 1.140, RSMo 1986.

Where, as here, the procedure by which the legislature enacted a bill violates the Constitution, severance is a more difficult issue. When the Court concludes that a bill contains more than one subject, the entire bill is unconstitutional unless the Court is convinced beyond reasonable doubt that one of the bill's multiple subjects is its original, controlling purpose and that the other subject is not. In reaching this determination, the Court will consider

whether the [additional subject] . . . is essential to the efficacy of the . . . [bill], whether it is a provision without which the . . . [bill] would be incomplete and unworkable, and whether the provision is one without which the . . . [legislators] would not have adopted the . . . [bill].

*Missourians to Protect the Initiative Process,* 799 S.W.2d at 832. *Cf.* Section 1.140. Where the Court is convinced that the bill contains a "single central [remaining] purpose", *id.,* we will sever that portion of the bill containing the additional subject(s) and permit the bill to stand with its primary, core subject intact. In determining the original, controlling purpose of the bill for purposes of determining severance issues, a title that "clearly" expresses the bill's single subject is exceedingly important.

---

not be commingled under unrelated headings. The organizational headings of the constitution are strong evidence of what those who drafted and adopted the constitution meant by "one subject."
*Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 831 (Mo. banc 1990).

Under this analysis, a statute may cover a broad range of matters relating to a specific constitutional topic or it may cover a broad range of constitutional topics but only if the statute has a single, readily identifiable and reasonably narrow purpose.

In this case, we have no difficulty in divining the primary subject of H.C.S.H.B.s 551 and 552. The title indicates the bill relates to elections. Review of the bill's passage through the House prior to the addition of amendments and an inspection of its contents as finally passed and presented to the governor shows that the bill is about election procedures. The bill's intended subject does not include substantive issues that may be placed before the voters to change county governance. Therefore, this Court may sever the challenged portions of the bill that do not address election procedures.

Section 2 of H.C.S.H.B.s 551 and 552 contains seven subsections. The first subsection authorizes certain counties to "frame a county constitution" and permits the county commission to place the substantive question whether its county should form a commission to draft such a constitution before the voters. It also requires the election authority to certify election results on the question to the county commission and the circuit court.

The second subsection directs the circuit judges of a circuit containing a county in which the voters have voted to form a commission to appoint a framing commission. The third subsection requires the election authority to conduct an election to permit the voters to approve the constitution framed by the commission and directs that the county constitution, if approved, supersedes any contrary county law.

The fourth subsection directs the election authority to publish the full contents of the proposed county constitution "at least once a week for at least three weeks" prior to the election. The fifth subsection describes the ballot proposition and creates procedures that the county commission must follow before resubmitting a previously defeated proposed county constitution to the voters. The sixth subsection provides procedures for the election authority after the voters approve the constitution and directs, *inter alia*, that courts of law take judicial notice of the contents of the constitution. The final subsection deals with the manner in which the county constitution may be amended.

As we have said, section 2 of H.C.S.H.B.s 551 and 552 adds a second subject to the bill.

The Court is convinced beyond reasonable doubt that the provisions of section 2 are not essential to the efficacy of the bill, that H.C.S.H.B.s 551 and 552 are both complete and workable without section 2 and that the legislature would have adopted the bill without section 2. Therefore, we hold that section 2 is severable and that the remainder of H.C.S.H.B.s 551 and 552 remains in effect.

### E.

There is a final question: Whether any provisions of section 2 can be severed and combined with the remainder of H.C.S.H.B.s 551 and 552? The core purpose of section 2 is to authorize certain counties to adopt a form of government not previously recognized in Missouri. All of the elements of section 2 are intended to bring about that core purpose. Those portions of section 2 that describe election procedures exist for the single overriding purpose of accomplishing adoption of a county constitution. If the authority to adopt a county constitution does not exist because the provisions of the law creating that authority were adopted in violation of article III, section 23, the election procedures adopted to bring about that purpose are incomplete and unworkable. The statutory authority to adopt a county constitution is essential to the efficacy of the remaining provisions of section 2. Moreover, we are not convinced beyond reasonable doubt that the legislature would have adopted the specific election procedures created in section 2 without authorizing a county to adopt a county constitution. Therefore, we cannot sever any of the provisions of section 2 of H.C.S.H.B.s 551 and 552. All of section 2 violates the constitution. All of its provisions must fall.

### III.

We hold that section 2 of House Committee Substitute for House Bills 551 and 552 violates the procedural requirement of article III, section 23 of the Missouri Constitution that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title." In permitting section 2 to become part of the bill finally passed and presented to the governor, the General Assembly ex-

ceeded its constitutional authority. For the reasons previously expressed, this Court severs section 2 from the bill and declares it void. The remaining provisions of House Committee Substitute for House Bills 551 and 552 continue in effect.

The judgment of the circuit court is reversed and the Boone County election authority is permanently enjoined from placing the question ordered by the Boone County Commission pursuant to H.C.S.H.B.s 551 and 552 at its November 16, 1993 meeting to the voters on April 5, 1994. Pursuant to the joint request of the parties for expedited treatment of this case and because of the immediacy of the election, we direct the Boone County election authority to remove the question *sub judice* from the public notification of questions to be presented to the voters at the April 5, 1994 election and to remove the question from the ballots presented to the voters of Boone County at the election on April 5, 1994. If the question cannot be removed entirely from the ballot, we direct the election authority to place a plain white, opaque, adhesive sticker, bearing no printing whatsoever and sufficient in size to cover the ballot question completely, over that portion of the ballot displaying the question *sub judice*.

The mandate is directed to issue immediately.

All concur.

HOLSTEIN, J., concurs in separate opinion filed.

COVINGTON, C.J., and BENTON and ROBERTSON, JJ., concur in opinion of HOLSTEIN, J.

HOLSTEIN, Judge, concurring.

I fully concur in the majority opinion but write separately to suggest that if there is a constitutional challenge to the form in which the legislature enacts a bill, as opposed to a substantive challenge to the content of a bill, this Court should establish strict time standards for bringing an action to judicially review procedural defects. Unfortunately, the widespread violation of article III, § 23 in recent years necessitates articulating time limits to avoid expensive and, I believe, unnecessary litigation that is sure to follow the holding in this case.

As correctly noted by the majority, the defect in H.C.S.H.B.s 551 and 552 is a defect in the form of its enactment. No case in Missouri has defined the time limits for raising such challenges to the enactment of a bill into law. A defect in the form of a bill does not impact on an individual's substantive rights.

Where no individual substantive rights are at stake, a claim that the bill is defective in form should be raised at the first opportunity. I would hold that an attack on a statute for such defects must be filed no later than the adjournment of the next full regular legislative session following a bill's effective date as law unless it can be shown that there was no party aggrieved who could have raised the claim within that time. In the latter circumstance, the complaining party must establish that he or she was the first person aggrieved or in the class of first persons aggrieved, and that the claim was raised not later than the adjournment of the next full regular legislative session following any person being aggrieved. In no event could such claims be raised later than ten years after the bill complained of becomes effective. § *516.110(3), RSMo 1986.*

The time limits I would adopt strike a balance between the citizen's right to insist that the legislature comply with constitutional procedural safeguards that prevent logrolling and the strong presumption of regularity of legislative proceedings that promotes stability and finality of legislative enactments. Here the claim was timely filed.