**MISSOURI ROUNDTABLE FOR LIFE, INC., Frederic N. Sauer, Missouri Right to Life, Pam Fichter, and Lawyers for Life, Inc., Respondents,**

v.

**STATE of Missouri, et al., Appellants.**

No. SC 92455.

Supreme Court of Missouri, En Banc.

March 19, 2013.

James Layton, Solicitor General, Attorney General's Office, Jefferson City, for the State.

Stephen Clark, The Clark Law Firm LLC, St. Louis, for Missouri Taxpayers.

Patrick C. Woolley, Michael A. Moorefield, Adam R. Troutwine and Susan B. Henderson–Moore, Polsinelli Shughart PC, for Missouri Biotechnology Association.

PER CURIAM.

Missouri Roundtable, et al., ("Roundtable") filed suit in the circuit court of Cole County seeking to enjoin the implementation of Missouri Senate Bill No. 7 ("SB 7") and reverse any actions already taken to execute its provisions. The circuit court granted Roundtable's motion for judgment on the pleadings, concluding that SB 7 violates the single subject rule of article III, section 23 of the Missouri Constitution, cannot be severed under the facts of this case, and, therefore, SB 7 is unconstitutional "in its entirety." The circuit court entered judgment for Roundtable, and the State of Missouri appeals.

This Court agrees with the circuit court, and the record supports, in a very compelling manner, the circuit court's conclusion that SB 7 is unconstitutional in its entirety as a violation of the single subject provision of article III, section 23 as well as the factual finding and legal conclusion that section B cannot be severed from the remainder of SB 7 under the facts of this case. The judgment of the circuit court is affirmed.

**Factual and Procedural Background**

This appeal involves SB 7, "An Act to repeal sections 196.1109, [etc.], RSMo, and to enact in lieu thereof fourteen new sections relating to science and innovation, with a contingent effective date." This bill was passed during the First Extraordinary Session of the 96th Missouri General Assembly (commonly referred to as the special session),[1] and the Governor signed it October 21, 2011. The bill had two sections: section A contains the substantive provisions, regarding science and innovation, and section B provides:

Section A of this act relating to science and innovation shall not become effective except upon the passage and approval by signature of the governor only of senate bill no. 8 relating to taxation and enacted during the first extraordinary session of first regular session of the ninety-sixth general assembly.

Section B hinged the effectiveness of SB 7 upon the passage of Senate Bill No. 8 ("SB 8") and its approval by the Governor. The General Assembly did not pass SB 8, entitled "An Act to repeal sections 32.115, [etc.], RSMo, and to enact in lieu thereof eighty-two new sections relating to taxation, with penalty provisions and an emergency clause."

Despite the failure of the General Assembly to pass SB 8 regarding taxation, various agencies began to implement section A of SB 7 regarding science and innovation. Roundtable filed this action to enjoin the implementation of SB 7 and reverse the steps already taken by the agencies toward its execution. The circuit court concluded that SB 7 was unconstitutional in its entirety as a violation of the single subject provision of article III, section 23.

Article V, section 3 of the Missouri Constitution gives this Court exclusive jurisdiction over this appeal because it involves the validity of a Missouri statute.

1. This special session resulted in the legislature passing only two bills, including SB 7, which the legislature stated would not become effective unless SB 8 was signed by the Governor. This did not occur.

### Standard of Review

■■■ "Constitutional challenges to a statute are reviewed *de novo.*" *Rentschler v. Nixon,* 311 S.W.3d 783, 786 (Mo. banc 2010). This Court presumes statutes to be valid and will not find a statute unconstitutional unless it clearly contravenes a constitutional provision. *Legends Bank v. State,* 361 S.W.3d 383, 386 (Mo. banc 2012). Challenges to legislation based on constitutionally imposed procedural limitations are not favored. *Hammerschmidt v. Boone County,* 877 S.W.2d 98, 102 (Mo. banc 1994). However, if the act "clearly and undoubtedly violates the constitutional limitation," this Court will hold it unconstitutional. *Id.*

### Analysis

The Governor could have vetoed SB 7 and expressly stated that it violated the single subject rule of article III, section 23.[2] But the Governor chose not to exercise his right to veto, and he did so expressing uncertainty as to whether the bill could become effective. In a news release regarding SB 7 that was made part of the record in this case, Governor Nixon's office stated, "Contingency clauses contained in legislation have been voided in the past, and ultimately a court may have to determine the effect, if any, of the contingency clause contained in Senate Bill 7."

### SB 7 Violates Article III, Section 23 of the Missouri Constitution

■■■ Article III, section 23 provides, "No bill shall contain more than one subject which shall be clearly expressed in its title ..." This section is mandatory and not merely directory. *Hammerschmidt,* 877 S.W.2d at 102. "Subject" for the purposes of section 23 includes "all matters that fall within or reasonably relate to the general core purpose of the proposed legislation." *Id.* The test for whether a bill violates the single subject rule is "whether the bill's provisions fairly relate to, have a natural connection with, or are a means to accomplish the subject of the bill as expressed in the title." *Mo. Health Care Ass'n v. Att'y Gen. of the State of Mo.,* 953 S.W.2d 617, 622 (Mo. banc 1997). This test focuses on the title of the bill to determine its subject rather than the relationship between the individual provisions. *C.C. Dillon Co. v. City of Eureka,* 12 S.W.3d 322, 328 (Mo. banc 2000).

■■■ The legislature may constitutionally condition a law to take effect upon the happening of a future event, including a vote of the people. *Akin v. Dir. of Revenue,* 934 S.W.2d 295, 299 (Mo. banc 1996). However, this Court has not addressed the issue of whether such future event can be the passing of future legislation concerning a different subject matter.

■■■ The procedural limitations of article III, section 23 serve to "facilitate orderly procedure, avoid surprise, and prevent 'logrolling,' in which several matters that would not individually command a majority vote are rounded up into a single bill to ensure passage." *Stroh Brewery Co. v. State,* 954 S.W.2d 323, 325 (Mo. banc 1997). Procedural safeguards also ensure that members of the legislature and the public are aware of the subject matter of pending laws. *Id.* at 325–26. Section 23, in particular, is an important tool in the preservation of separation of powers, as articulated in *Hammerschmidt:*

> Because the governor may not employ a line item veto over legislation generally, the effect of the Constitution's single

---

2. In fact, he has done so in the past, when he vetoed House Bill 1900. *See Governor Nixon's Veto Letter for House Bill 1900;* H.B. 1900, 96th Gen. Assemb., 2d Reg. Sess. (Mo. 2012).

subject rule is to prevent the legislature from forcing the governor into a take-it-or-leave-it choice when a bill addresses one subject in an odious manner and another subject in a way the governor finds meritorious. Thus, by limiting the subjects a bill may address to one, the Constitution maintains appropriate checks by the governor over legislative action and effectively provides a line item analog for general legislation.

877 S.W.2d at 102.

According to its title, SB 7 is a bill "relating to science and innovation, with a contingent effective date." The only purpose of section B is to condition the effectiveness of section A upon the passage and signing of SB 8, which by its title is a bill "relating to taxation, with penalty provisions and an emergency clause." The 82 new sections proposed by SB 8 relate mainly to the provision of tax credits. Conditioning the effectiveness of the science and innovation provisions of SB 7 on the enactment of the taxation provisions in SB 8 clearly injects at least one additional subject into SB 7.

As finally passed, SB 7 was titled a bill to repeal a number of enumerated sections of the Revised Statutes of Missouri "and to enact in lieu thereof fourteen new sections relating to science and innovation, with a contingent effective date." The single subject core of this bill was to amend laws relating to science and innovation. Section B incorporated by reference a bill with a different subject, to amend provisions relating to taxation. Without delving too deeply into drafts of SB 8, one provision relating to taxation provided a tax credit for "[a]ny person residing in this state who proceeds in good faith with the adoption of a special needs child on or after January 1, 2000 . . ."

SB 7 clearly contained at least two subjects. Section B incorporated SB 8 into SB 7 in such a way that the two bills cannot reasonably be read separately. Prior to its passage, SB 7 was amended to incorporate by reference the taxation provisions of SB 8. These tax reform measures do not fairly relate to science and innovation, nor do they have any natural connection to that subject.

SB 7 is unlike the bill at issue in *Akin*, in which one provision of the bill provided for tax increases to fund the education programs contained elsewhere in the bill. 934 S.W.2d at 302. In *Akin*, those challenging the bill claimed the taxation provision was not part of the same subject as the rest of the bill. *Id.* However, because the taxation provision addressed the education provisions elsewhere in the bill and was not merely a general tax increase, the Court found that the taxation provision was a means to accomplish the purpose of the bill and, therefore, was part of the same subject. *Id.* The taxation provisions of SB 8, however, deal with comprehensive tax credit reforms. It cannot be said that, by the title and text of SB 7, legislators or the public could be aware of the extensive changes proposed by SB 8. Upon reading SB 7, members of both the public and legislature may not have been aware of the full extent of matters contained in SB 8. Senate Bill 8 would change 82 sections relating to taxation and set certain penalties. Merely putting the contingency in the title of SB 7 was not sufficient to make the public or legislature aware of the subject matter of the extensive taxation legislation upon which SB 7 is contingent.

Further, allowing bills such as SB 7 to condition their effectiveness on the passage of another piece of legislation on a completely different subject matter essentially circumvents the procedural limitations of the constitution and creates the very problems the procedures are intended

to prevent. The single subject rule would become meaningless if the legislature were able to condition the effectiveness of one bill upon passage of another bill covering a different subject matter. It would create the kind of logrolling the single subject rule is intended to prevent by allowing legislators to tack unpopular subjects on to bills to obtain a majority vote.

### Severance is Not Justified Under the Facts of this Case

■ Having determined that SB 7 is unconstitutional, this Court now must determine whether the circuit court's determination that section B of SB 7 should not be severed is supported by the record. It is important to note that this Court applies a different severance analysis for procedurally unconstitutional statutes than it does for substantively unconstitutional statutes. The statutory severability provision, section 1.140, RSMo Supp.2011, applies when a provision is unconstitutional in substance. While section 1.140 delineates when severance of *substantively* unconstitutional provisions is appropriate, it does not support the doctrine of severability of bills enacted in violation of the *procedural* mandates of the constitution. Section 1.140 provides that invalid provisions should be severed from otherwise valid provisions unless:

the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and

are incapable of being executed in accordance with the legislative intent.

As *Hammerschmidt* indicates, when "the procedure by which the legislature enacted a bill violates the Constitution, severance is a more difficult issue." 877 S.W.2d at 103. In fact, the severance analysis is different. That is because the General Assembly's constitutional violation raises the following question: If all provisions of the bill were passed through an unconstitutional procedure, should any of the provisions be considered valid? Despite this concern, and in due deference to our co-sovereign branch of government—which also takes an oath to support the Missouri Constitution—this Court has severed bills presenting procedural violations in the past. *See St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708 (Mo. banc 2011); *cf. Hammerschmidt*, 877 S.W.2d 98.

■ Because of the difference between *substantive* constitutional violations and *procedural* constitutional violations, this Court uses different standards when evaluating whether invalid provisions may be severed. For *substantive* violations, this Court applies section 1.140 to analyze whether severance is appropriate. On the other hand, when evaluating a *procedural* constitutional violation,[3] the doctrine of judicial severance is applied and severance is only appropriate when this Court is "convinced beyond a reasonable doubt" that the legislature would have passed the bill without the additional provisions and that the provisions in question are not essential to the efficacy of the bill. *Hammerschmidt*, at 103–104.[4] Both of these inqui-

---

3. These include the original purpose rule, the single subject rule, and the clear title rule of article III, sections 21 and 22 of the Missouri Constitution.

4. Unfortunately, these two standards have not appeared in this Court's precedent as distinctly different as they should. *See Legends Bank*, 361 S.W.3d at 387. The standards have become muddled through either the passage of time or clever lawyering so that previous

ries seek to assure the Court that, beyond a reasonable doubt, the bill would have become law—and would remain law—even absent the procedural violation. If the Court is not convinced beyond a reasonable doubt, then the bill as a whole was passed in violation of the constitution and the challenged provisions cannot be severed.

 As noted by the circuit court, the record demonstrates that this is not even a close case. In fact, the circuit court found "the Court would not sever Section B from SB 7 because the Court is convinced beyond a reasonable doubt that the legislature would *not* have passed SB 7 without Section B." The circuit court correctly held that the four corners of the bill *and* the legislative history provide no doubt as to whether SB 7 would have passed without section B. First, the title of the bill indicated that SB 7 was passed "with a contingent effective date." It should give this Court great pause when the provision a party seeks to sever appears as a portion of the bill's title. As the circuit court noted, the contingency clause in section B was part of the bill's very subject. This is sufficient to cast a reasonable doubt upon SB 7's passage absent section B.

Moreover, the legislative history of SB 7 demonstrates that SB 7 did not pass without section B because it repeatedly failed to pass in the General Assembly without it. It is true that it is often difficult to tell what the General Assembly would have done simply by looking at the legislative history of a given bill. And it is nearly impossible in most situations to tell why a given legislator voted, or did not vote, on a particular bill. The factual finding by the circuit court, that SB 7 would not have passed without making it contingent upon the passage of SB 8, however, is supported by substantial evidence. The evidence was so overwhelming the circuit court said it was "convinced beyond a reasonable doubt that the legislature would *not* have passed SB 7 without section B."

The undisputed facts are that every single version of SB 7 introduced prior to the final version did not include section B's contingency clause. Each of these prior versions failed to pass. This is true of each prior version of the bill that both houses of the General Assembly attempted to pass in both the 2011 regular session and the 2011 special session.[5] While it is difficult, if not impossible, to divine the motives of every legislator merely by looking at the legislative history, that is not the goal of this Court's severance analysis. Under the "reasonable doubt" standard, the history of SB 7 is sufficient to create reasonable doubt as to whether SB 7 would have passed without section B. Under this Court's prior cases, it need not be convinced that SB 7 would *not* have passed; it need only have reasonable doubt that SB 7 would have been able to garner sufficient support to pass without the procedurally invalid provision.

Furthermore, it cannot be said that, beyond a reasonable doubt, section B is not essential to the efficacy of SB 7. The plain text of the bill and its legislative history suggest that section B is essential to the efficacy of SB 7. Section B provides the

opinions of this Court have utilized the language of section 1.140 in procedural severance discussions even without citing that statute specifically. *Id. Hammerschmidt,* this Court's seminal case about severance of procedurally unconstitutional statutes, made clear, however, that the considerations of sec-

tion 1.140 do not adequately address the problems inherent in procedurally unconstitutional statutes. 877 S.W.2d at 103–04.

**5.** The text of these bills is available on the Senate and House of Representatives websites.

contingency upon which section A becomes effective. The legislature expressly provided that section A "shall not become effective" if SB 8 did not pass. It cannot be said, beyond a reasonable doubt, that the very clause that operated to make SB 7 effective was not essential to the efficacy of the bill. Moreover, as previously noted, SB 7 did not pass until after the addition of section B, at which point section B's contingency clause was incorporated into the very title of the bill. These facts, taken together, cast a reasonable doubt that section B is not essential to the efficacy of SB 7.

## Conclusion

The circuit court's determination that the State failed to meet its burden to prove beyond a reasonable doubt that SB 7 would have passed in a constitutional manner is supported by the record. The legislative history and text of SB 7 provide reasonable doubt that it would have passed absent the offending section. Therefore, this Court affirms the circuit court's judgment.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, STITH and DRAPER, JJ., concur.

Fischer, J., concurs in separate opinion filed.

WILSON, J., not participating.

1. This is now the fourth time that I have expressed this view. *Legends Bank*, 361 S.W.3d at 392–93 & n. 7 (Fischer, J., concurring); *St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 716 n. 6 (Mo. banc 2011), and *Schaefer v. Koster*, 342 S.W.3d 299, 306 n. 9 (Mo. banc 2011) (Fischer, J., dissenting). It may take an unpopular case result to convince the General Assembly that it is wiser to follow these constitutional procedural mandates than to transfer what if any part of a law survives up to the Governor or this Court.

ZEL M. FISCHER, Judge, concurring.

I concur with the per curiam opinion and, consistent with my concurring opinion in *Legends Bank v. State*, 361 S.W.3d 383, 386 (Mo. banc 2012), I write separately to express my view that the judicially created doctrine of severance should be abolished.[1] The procedural mandates of the Missouri Constitution are designed to create an open and transparent legislature. In addition, they help prevent logrolling. *Hammerschmidt*, 877 S.W.2d at 101–02. In my view, by considering severance in cases where this Court has determined that the General Assembly violated mandatory procedures of the Missouri Constitution, this Court encourages improper behavior in the legislature.

It is not difficult to understand how it comes to pass that so many bills involving these violations find their way into this Court. Under the current law, which sometimes permits severance, legislators have little incentive—other than, presumably, their oath to uphold the constitution—to comply with procedural obligations. Legislators can sometimes operate with impunity, knowing that, so long as their favored portion of the bill is the original purpose or "single subject" of the bill, the courts are likely to uphold that portion of the bill while severing the others.

Severance for procedurally unconstitutional provisions effectively violates the separation of powers protected by both the

My concurrence in *Legends Bank*, 361 S.W.3d at 393, foreshadowed what in my view was obvious:

> In essence, severance, which presumably legislators favor because it allows a portion of their legislation to survive, amounts to judges being allowed to draft legislation, which presumably legislators do not favor. **The legislature can have the final say on these matters if they enact legislation in accord with the procedures prescribed in the Missouri Constitution.**

United States Constitution and article II, section 1 of the Missouri Constitution. *Legends Bank*, 361 S.W.3d at 392–93 (Fischer, J., concurring). This case is particularly demonstrative of this principle as the Governor signed a bill into law that he knew the General Assembly had made contingent on the passage of another bill related to a different subject that the Governor knew did not pass.

For that reason, this case presents a stellar opportunity to abolish the judicially created doctrine of severance so the General Assembly would know with certainty that any legislation enacted in violation of article III, sections 21 or 23, of the Missouri Constitution will not become effective if timely challenged.

I concur with the principal opinion that the judgment of the circuit court should be affirmed whether this Court applies the judicially created doctrine of severance as set out in the unanimous opinions of *Prestige* and *Hammerschmidt* or whether, as expressed in my concurrence in *Legends Bank*, it determines that severance no longer should be permitted to allow an unconstitutionally enacted bill to become law. That is because, this bill fails—even under this Court's precedent allowing for severance where the court has determined beyond a reasonable doubt that the "core subject" provisions of the bill would have passed on their own. There is no doubt SB 7 would not have passed without section B because the terms of the bill and the record demonstrate that it would not have passed without the added subject matter.

This case reinforces my view that the judicially created doctrine of severance no longer should be used in Missouri to save legislation enacted in violation of the procedural mandates of the Missouri Constitution. Therefore, I would always hold all three branches of government to the man-

dates of article III, section 23 and affirm the circuit court's judgment without even considering whether any part of a bill enacted in violation of the Missouri Constitution should become law.