SUPREME COURT OF MISSOURI
 en banc

CITY OF DE SOTO AND JAMES ACRES, ) Opinion issued July 22, 2021
 )
 Appellants, )
 )
v. ) No. SC98891
 )
MICHAEL L. PARSON, GOVERNOR OF )
THE STATE OF MISSOURI, ET AL., )
 )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
 The Honorable Jon E. Beetem, Judge

 The City of De Soto (“De Soto”) and James Acres (collectively, “the Plaintiffs”), a

resident of De Soto, filed suit against the governor and the attorney general seeking a

declaratory judgment that section 321.320 1 is an unconstitutional special law and that

House Bill No. 1446 (“HB 1446”) violates the single-subject provision of the Missouri

Constitution. Plaintiffs also sought an injunction to enjoin the enforcement of section

321.320 and HB 1446. The De Soto Fire Protection District (“the District”) was granted

intervention as a defendant. The Plaintiffs and Defendants (the “state”) filed cross

motions for summary judgment. The circuit court sustained the state’s motion for

1
 All statutory references are to RSMo Supp. 2018 unless otherwise noted.
summary judgment on all claims. Plaintiffs appeal, and this Court has jurisdiction

pursuant to article V, section 3 of the Missouri Constitution. For the reasons set forth

below, the circuit court’s judgment is vacated, and this case is remanded to the circuit

court to enter judgment for the Plaintiffs.

 Background

 In 2018, the house of representatives passed and sent to the senate HB 1446. At

that time, the bill sought only to amend section 115.124.1 to allow certain political

subdivisions, special districts, and municipalities to forego elections where the number of

candidates is equal to the number of offices to be voted upon. The title of the bill was:

“To repeal section 115.124, RSMo, and to enact in lieu thereof one new section relating

to elections.” [Emphasis added.]

 In the senate, three new provisions were added. First, section 32.315 was added to

require the department of revenue to issue an annual report listing all sales and use tax

levies that had been authorized by state law, approved by local voters, and collected by

the department of revenue. Second, section 115.157 was amended to require the

secretary of state to provide authorized individuals with certain information about voters

who requested absentee ballot applications. Finally, section 321.370 was amended to add

an introductory phrase to subsection 1 and to add new subsections 2 through 5. The

effect of these changes was to provide an exception to the ordinary consequences of a

city annexing land that had been part of a fire protection district. This new exception,

however, did not apply everywhere such an annexation might occur. Instead, it applied

only to one carefully defined region and, even then, three carefully identified groups of

 2
cities were excluded from that region. As amended by HB 1446, section 321.320 now

provides:

 1. Except as otherwise provided in this section, if any property, located
 within the boundaries of a fire protection district, is included within a city
 having a population of forty thousand inhabitants or more, which city is not
 wholly within the fire protection district, and which city maintains a city
 fire department, the property is excluded from the fire protection district.

 2. Notwithstanding any provision of law to the contrary, unless otherwise
 approved by a majority vote of the governing body of the municipality and
 a majority vote of the governing body of the fire protection district, … a
 fire protection district serving an area included within any annexation by a
 municipality located in any county of the first classification with more than
 one hundred fifty thousand but fewer than two hundred thousand
 inhabitants, or an area included within any annexation by a municipality in
 a county having a charter form of government, approved by a vote after
 January 1, 2008, including simplified boundary changes, shall, following
 the annexation:

 (1) Continue to provide fire protection services, including
 emergency medical services to such area;
 (2) Levy and collect any tax upon all taxable property
 included within the annexed area authorized under chapter
 321;
 (3) Enforce any fire protection and fire prevention ordinances
 adopted and amended by the fire protection district in such
 area.

 3. All costs associated with placing an annexation on the ballot within a
 municipality that involves an area that is served by a fire protection district
 shall be borne by the municipality.

 4. The provisions of subsections 2 and 3 of this section shall not apply to:

 (1) Any city of the third classification with more than four
 thousand five hundred but fewer than five thousand
 inhabitants and located in any county with a charter form of
 government and with more than two hundred thousand but
 fewer than three hundred fifty thousand inhabitants;

 3
 (2) Any city of the fourth classification with more than three
 thousand but fewer than three thousand seven hundred
 inhabitants and located in any county with a charter form of
 government and with more than two hundred thousand but
 fewer than three hundred fifty thousand inhabitants; and
 (3) Any city of the third classification with more than eleven
 thousand five hundred but fewer than thirteen thousand
 inhabitants and located in any county with a charter form of
 government and with more than two hundred thousand but
 fewer than three hundred fifty thousand inhabitants.

 5. Notwithstanding any other provision of law to the contrary, the residents
 of an area included within any annexation by a municipality located in any
 county of the first classification with more than one hundred fifty thousand
 but fewer than two hundred thousand inhabitants, or an area included
 within any annexation by a municipality in a county having a charter form
 of government, approved by a vote after January 1, 2008, may vote in all
 fire protection district elections and may be elected to the fire protection
 district board of directors.

§ 321.320.

 The house adopted the senate’s changes to HB 1446 and, on June 1, 2018, the

governor signed HB 1446 into law. The title to the final version of HB 1446 reads: “AN

ACT to repeal sections 115.124, 115.157, and 321.320, RSMo, and to enact in lieu

thereof four new sections relating to elections, with an emergency clause for a certain

section.” 2 [Emphasis added.]

 Plaintiffs claim that subsections 2 and 3 of section 321.320 apply only to De Soto

and, therefore, render that statute an invalid special or local law under article III,

section 40(30). Plaintiffs also claim that HB 1446 contains multiple subjects and,

2
 The emergency clause applied to the amendments to section 321.320 and was deemed
necessary due to “the need to ensure the equal voting rights of persons residing in fire protection
districts[.]” House Bill 1446 (2018), Section B.

 4
therefore, is invalid under article III, section 23 of the Missouri Constitution. Plaintiffs

and the state filed cross motions for summary judgment and, after a hearing, the circuit

court entered judgment for the state.

 Analysis

 “The person challenging the statute’s validity bears the burden of proving the act

clearly and undoubtedly violates the constitution.” Bd. of Managers of Parkway Towers

Condo. Ass’n v. Carcopa, 403 S.W.3d 590, 592 (Mo. banc 2013) (quotation marks

omitted). This means Plaintiffs always bore the burden to prove HB 1446 violates the

constitution. At no time did the burden on this question shift to the state. In addition,

Plaintiffs now bear “the burden to overcome many presumptions on appeal, including the

presumption that the circuit court’s judgment is correct.” Lollar v. Lollar, 609 S.W.3d

41, 45 n.4 (Mo. banc 2020).

 That being said, the state – because it moved for summary judgment in the circuit

court – bore the burden to “demonstrate[], on the basis of facts as to which there is no

genuine dispute, a right to judgment as a matter of law.” ITT Commercial Fin. Corp. v.

Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). One way for a

defendant to do this is to show that the claimant cannot establish at least one essential

element of the claim. As a result, it can be said (without contradicting the foregoing)

that, by moving for summary judgment, the state undertook the burden to show that the

Plaintiffs could not show HB 1446 violates the constitutional provisions at issue. Though

this sounds suspiciously like the state had the burden to show the bill was constitutional,

that is not accurate. By moving for summary judgment, the state merely assumed the

 5
burden to show with undisputed facts that the Plaintiffs could not establish that HB 1446

was unconstitutional. This may be a fine distinction, and one with little practical effect,

but it serves to highlight and protect the inviolate principle that statutes are presumed

constitutional and the burden rested with the Plaintiffs to show that HB 1446 clearly and

undoubtedly contravenes some constitutional provision. 3

 Plaintiffs assert eight separate points in this appeal, including claims that the

circuit court erred because HB 1446 violates the single-subject provision in the Missouri

Constitution and that the circuit court erred because section 321.320 is an

unconstitutional special law. Because this Court holds that HB 1446 violates the

prohibition against multiple subjects in article III, section 23, the circuit court erred in

sustaining the state’s summary judgment motion and should have sustained Plaintiffs’

cross motion for summary judgment. 4 This Court, therefore, need not – and does not –

reach any of Plaintiffs’ other claims in this appeal, including the claim that HB 1446

violates the prohibition against special laws in article III, section 40(30).

 Article III, section 23 provides that “[n]o bill shall contain more than one subject

which shall be clearly expressed in its title[.]” This Court has noted that this provision

3
 To introduce one final layer of complexity, this Court reviews the circuit court’s grant of
summary judgment de novo. ITT Commercial, 854 S.W.2d at 376. But this standard of review
does not alter that appellants always bear the burden of establishing error whatever the standard
of review.
4
 “A trial court’s overruling of a motion for summary judgment generally is not subject to
appellate review. In rare circumstances, however, the overruling of a party’s motion for
summary judgment can be reviewed when its merits are intertwined completely with a grant of
summary judgment in favor of an opposing party.” Bob DeGeorge Assocs., Inc. v. Hawthorn
Bank, 377 S.W.3d 592, 596-97 (Mo. banc 2012) (internal citation omitted). This is such a case.

 6
plays an important role in focusing legislative debate, providing adequate notice and

preventing surprise to legislators or the public, and deterring the use of “logrolling,” i.e.,

the practice of combining in a single bill multiple unrelated provisions that could not

muster a majority individually but which can do so collectively. Hammerschmidt v.

Boone Cnty., 877 S.W.2d 98, 101 (Mo. banc 1994). This Court has applied a consistent

analytical approach to challenges under article III, section 23:

 Missouri law long has recognized that the test for whether a bill addresses a
 single subject is not how the provisions relate to each other, but whether the
 provisions are germane to the general subject of the bill. The provisions of
 the bill will be found germane to a single subject if all provisions of the bill
 fairly relate to the same subject, have a natural connection therewith or are
 incidents or means to accomplish its purpose. When determining the
 subject, this Court will first look at the title of the bill, and [t]o the extent
 that the bill’s original purpose is properly expressed in the title to the bill,
 [the Court] need not look beyond the title to determine the bill’s subject. In
 determining whether this standard is met, this Court will look only at the
 bill as finally enacted.

Mo. Coal. for Env’t v. State, 593 S.W.3d 534, 541 (Mo. banc 2020) (alterations in

original) (quotations and citations omitted).

 Here, the title of HB 1446 as enacted reveals that the subject of the bill is

“elections.” The contents of HB 1446, however, contain provisions that do not fairly

relate to, have a natural connection with, or serve as an incident to or means of

accomplishing that subject. The state attempts to defend HB 1446 on the ground that

each of its provisions fairly relate to the subject “elections.” Specifically, the state argues

that section 32.315, requiring the department of revenue to issue an annual report listing

sales and use tax levies, limits that report to, among other things, levies that have been

“approved by voters at an election.” And, the state argues, the changes to section

 7
321.320 fairly relate to “elections” because subsections 2 and 4 authorize a majority of

voters of a municipality and a fire protection district to change the consequences of an

annexation, assuming that annexation occurs in a narrow, carefully defined area of the

state.

 One need not look further than Hammerschmidt, one of this Court’s archetypical

decisions in its modern single-subject jurisprudence, to understand why the state’s

arguments fail. There, as in the present case, the title of the bill at issue was “relating to

elections.” Hammerschmidt, 877 S.W.2d. at 103. And, as in the present case, the county

argued in Hammerschmidt that the wayward provision in that bill was sufficiently related

to the subject “elections” because it required voter approval before a county could adopt a

charter form of government. Id. This Court rejected outright the notion that everything

that might require a plebiscite to become effective is, by that virtue alone, germane to a

bill with the subject “elections.”

 It is true that the amendment added to the bill as section 2 contained
 provisions requiring voter approval of a proposition through an election.
 Nevertheless, the subject of the amendment—its raison d’etre—was to
 authorize a new form of county governance previously unknown in
 Missouri. The election provisions contained in the amendment served no
 purpose beyond furthering the adoption of this new form of county
 governance.

 Applying [the test from] Westin Crown Plaza Hotel [Co. v. King, 664
 S.W.2d 2, 6 (Mo. banc 1984)], we conclude that the bill sent by the
 legislature to the governor contained two subjects. The amendment
 authorizing a county to adopt a county constitution does not fairly relate to
 elections, nor does it have a natural connection to that subject. Further,
 provisions of a bill vesting authority in counties to adopt a new form of
 government are not necessary incidents nor do they provide a means to
 accomplish the purposes of a bill to amend laws “relating to elections.”

 8
Id.

 Here, it is true that the new subsection 2 of section 321.320 requires fire protection

districts in one apparently very special area of the state 5 to continue to provide services

(and levy and collect taxes) in any area it served even after that area is annexed by a

municipality unless a majority of governing bodies of the municipality and the district –

or a majority of the voters of the municipality and the district – approve otherwise. As in

Hammerschmidt, however, the mere fact that this provision references the possibility (but

not even the necessity) of an election does not render the amendments to subsections 2

and 4 of 321.320 in HB 1446 germane to the subject of “elections.” Instead, the subject

of those amendments is the effect of municipal annexations of land formerly served by a

fire protection district in a single, rigidly defined region of the state. Even taking the

most generous view, the subject of those amendments is annexations, not “elections.” To

hold that both the changes to sections 115.124.1 and 115.157.4 and the amendments to

section 321.320 6 fairly relate to, have a natural connection with, or are a means of

accomplishing a single subject is to read the prohibition against multiple subjects in

article III, section 23 “so broadly that the [constitutional] phrase becomes meaningless.”

5
 The restricted application of the new exception in section 321.320.2 to a single region is
further narrowed by the exclusion of various cities from that exception as set forth in the new
subsection 321.320.4.
6
 It hardly needs noting that, if the passing and wholly contingent reference to potential future
elections in section 321.320.2 is not sufficiently germane to HB 1446’s subject of “elections,”
then any attempt to defend the new section 32.315 as fairly relating to that subject merely
because the department of revenue is only required to include in its new report those sales and
use tax levies that had been “approved by voters at an election” falls even shorter of passing
constitutional muster.

 9
Hammerschmidt, 877 S.W.2d at 102. See also Carmack v. Dir., Mo. Dep’t of Agric., 945

S.W.2d 956, 960 (Mo. banc 1997) (holding that the bill violated the single-subject

challenge and the state’s proposed definition “prove[d] too much”). See also Rizzo v.

State, 189 S.W.3d 576, 579 (Mo. banc 2006) (holding that the state’s argument provided

too broad of a definition of the bill’s subject).

 Because the multiple subjects in HB 1446 violate article III, section 23, the only

question remaining is whether the entire bill is invalid or whether those portions that are

not germane to the subject of “elections” can be severed so the germane provisions can

survive. When evaluating a procedural constitutional violation such as a violation of

article III, section 23, “the doctrine of judicial severance is applied and severance is only

appropriate when this Court is convinced beyond a reasonable doubt that the legislature

would have passed the bill without the additional provisions and that the provisions in

question are not essential to the efficacy of the bill.” Mo. Roundtable for Life v. State,

396 S.W.3d 348, 353 (Mo banc 2013) (quotation marks omitted). “Both of these

inquiries seek to assure the Court that, beyond a reasonable doubt, the bill would have

become law—and would remain law—even absent the procedural violation.” Id. at

353-54.

 There is no reason to believe, let alone any basis for concluding beyond a

reasonable doubt, that the General Assembly would have passed HB 1446 without the

amendments to section 321.320 and the creation of section 32.315. 7 When the house

7
 In its brief in this Court, the state makes only conclusory assertions that the two-part test for
judicial severance is met and, instead, argued that the Plaintiffs have failed to show it is not

 10
initially perfected HB 1466, it was limited to amendments to section 115.124. The senate

committee added changes to sections 65.610, 65.620, 88.770, 94.900, 115.157, and

162.441. The full senate rejected the committee’s additions (with the exception of the

amendment to section 115.157) but did not stop there. Instead, the full senate added the

new section 32.315 and the amendments to section 321.320, which this Court holds were

unrelated to the subject “elections.” The house later approved the senate’s changes, and

the bill was signed by the Governor. It certainly is possible that the senate would have

passed the bill as originally perfected in the house, i.e., without the changes to section

321.320 and the creation of section 32.315, or that both the house and the senate would

have approved a version with the amendments to sections 115.124 and 115.157; these are

simply possibilities. Neither of these events ever happened, and there is simply no basis

for inferring – with the high degree of certainty required by this Court’s prior cases – that

this is what would have happened. Accordingly, the doctrine of judicial severance is not

available to rescue any portion of HB 1446 from the consequences of the multiple-subject

met. As the language in Missouri Roundtable demonstrates, however, the burden of establishing
grounds for judicial severance rests with the party seeking severance. Mere assertions on the
subject will not suffice. The state also asks that – if the Court concludes the constitutional
prohibition against multiple subjects has been violated, it be given an opportunity for further
briefing in this Court or an opportunity to address the matter in the circuit court on remand.
Neither is appropriate. The state already had an opportunity to address this issue below and to
brief it in this Court. The fact that, when those opportunities arose, the state chose to focus on its
arguments that HB 1446 was not unconstitutional rather than also address the extent of the
remedy to which Plaintiffs would be entitled if it were, does not entitle the state to a second bite
of either apple now. In any event, the state suffers no prejudice from its choices because, as
noted above, there simply is no basis for invoking judicial severance under these circumstances.
Additional proceedings, whether in this Court or the circuit court, would not supply one.

 11
violation caused by the addition of the amendments to section 321.320 or the creation of

section 32.315. Accordingly, the entire bill is invalid and may not be enforced.

 Conclusion

 For the reasons set forth above, the circuit court’s entry of summary judgment in

favor of the state is vacated, and this case is remanded to the circuit court to enter

judgment for the Plaintiffs. 8

 _____________________________
 Paul C. Wilson, Chief Justice

Russell, Powell, Breckenridge, Fischer and
Draper, JJ., concur. Ransom, J., not participating.

8
 Because the Plaintiffs ask for an injunction in addition to a declaratory judgment, this Court
declines to enter judgment for the Plaintiffs pursuant to Rule 84.14.

 12