**LEGENDS BANK and John Klebba, Respondents,**

v.

**STATE of Missouri, et al., Appellants.**

**No. SC 91742.**

Supreme Court of Missouri, En Banc.

Feb. 14, 2012.

Ronald R. Holliger, James R. Layton, Solicitor General, Attorney General's Office, Jefferson City, for the state.

Charles W. Hatfield, Khristine A. Heisinger, Stinson Morrison Hecker LLP, Jefferson City, for the bank and Klebba.

RICHARD B. TEITELMAN, Chief Justice.

The State of Missouri appeals a judgment holding that all provisions of Senate Bill 844, except those relating to procurement, are unconstitutional because they violate the single subject limitation set forth in article III, section 23 of the Missouri Constitution. The Court holds that SB 844 violates article III, section 21, which prohibits changes in the original purpose of a bill. The judgment of the circuit court is affirmed.

### FACTS

Senate Bill 844 (SB 844) was introduced as "An Act to amend chapter 37, RSMo, by adding one new section relating to contracts for purchasing, printing, and services for statewide elected officials." SB 844 added section 37.900, allowing statewide elected officials to use the office of administration for determining the lowest bidder during procurement.

The Senate perfected SB 844 with two amendments. One amendment provided that the office of administration could not prohibit the purchase of supplies from an authorized General Services Administration vendor. The second amendment required that each member of the senate and house of representatives be provided with keys to the capitol dome.

The House adopted Substitute No. 2 for SB 844. This version of SB 844 removed the keys to the capitol dome provision but retained the sections related to procurement. This version also repealed 29 sections of law and enacted 49 sections of law, including changes to chapters 105, 115 and 130, RSMo.[1] The title of the bill was changed to "relating to ethical administration of public institutions and officials, with penalty provisions and a contingent effective date for certain sections."

On May 11, 2010, three days before the end of the legislative session, the Senate refused to accept the House version of SB 844. A House and Senate conference committee submitted Conference Committee Substitute No. 3 for SB 844. On May 14, 2010, the last day of the legislative session, this version of SB 844 was truly agreed to and finally passed. This version of SB 844 was titled "An Act ... relating to ethics, with penalty provisions." As passed, SB 844 retained section 37.900 allowing statewide elected officials to use the office of administration for procurement and also included the keys to the capitol dome provision. The final version of SB 844 also repealed and enacted a number of sections in chapters 105, 115 and 130 and added a new section in chapter 575 making it a misdemeanor to obstruct an ethics investigation.

Legends Bank and John Klebba (Respondents) filed a declaratory judgment action asserting that SB 844 violated the single subject requirement of article III, section 23 of the Missouri Constitution and the original purpose requirement of article III, section 21. Respondents also asserted that SB 844 violated the First Amendment insofar as it bars political action committees from receiving money from Missouri

---

1. Chapter 105 sets forth miscellaneous provisions pertaining to public officers and employers. Chapter 115 governs election authorities and the conduct of elections. Chapter 130 governs campaign finance disclosure.

state chartered banks but allows political action committees to receive money from other entities and individuals.

The trial court sustained Respondents' motion for judgment on the pleadings. The court found that procurement was the original controlling purpose of SB 844; that SB 844 was enacted in violation of the single subject requirement set forth in article III, section 23 and that section 130.031.13 violated the First Amendment. The court voided SB 844 except for the procurement provisions of sections 37.900 and 34.048. The state appeals.

### STANDARD OF REVIEW

This Court has exclusive jurisdiction over this appeal under article V, section 3 of the Missouri Constitution as the appeal involves the validity of a statute of this state. "Constitutional challenges to a statute are reviewed de novo." *Rentschler v. Nixon,* 311 S.W.3d 783, 786 (Mo. banc 2010). A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *Id.* Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored. *Missouri Ass'n of Club Executives v. State,* 208 S.W.3d 885, 888 (Mo. banc 2006). However, if an act of the legislature clearly and undoubtedly violates a constitutional procedural limitation, this Court will hold it unconstitutional. *Id.* The judgment of the trial court can be affirmed on any grounds supported by the law and evidence. *Purcell v. Cape Girardeau County Com'n,* 322 S.W.3d 522, 524 n. 4 (Mo. banc 2010).

### ANALYSIS

Article III, section 21 prohibits any bill from being "so amended in its passage through either house as to change its original purpose." Original purpose re-

fers to the general purpose of the bill. *Club Executives,* 208 S.W.3d at 888. The original purpose of a bill is established by the bill's "earliest title and contents" at the time the bill is introduced. *Id.* The original purpose requirement does not prohibit subsequent additions or changes to legislation. Instead, the restriction is against the introduction of a matter that is not germane to the object of the legislation or that is unrelated to its original subject. *Id.*

The first step in the original purpose analysis is to identify the original purpose. According to its earliest title and contents, SB 844's original purpose was to add "one new section relating to contracts for purchasing, printing, and services for statewide elected officials." Consistent with the stated purpose, the original version of SB 844 added section 37.900, which allowed statewide elected officials to use the office of administration for determining the lowest bidder during procurement. The title and earliest contents of SB 844 demonstrate that the original purpose pertained to procurement of necessary goods and services for elected officials.

The second analytical step is to compare the original purpose with the final version of SB 844. The original purpose of SB 844 related to procurement. However, the vast majority of the provisions in the final version of SB 844 relate to ethics and campaign finance. Ethics, campaign finance restrictions and keys to the capitol dome are not germane to the original purpose of SB 844, which was to change the method by which statewide elected officials bid for printing services, paper and similar items. The final version of SB 844 contained numerous provisions that are not germane to the original purpose of the bill at the time it was introduced.

This case is similar to *Club Executives,* where the original purpose of the legisla-

tion at issue dealt with alcohol-related traffic offenses. *Id.* at 888. Subsequent revisions in the title and content included non-traffic related alcohol offenses, such as the sale of alcohol to minors. These provisions could be viewed as logically connected and germane to the original purpose of the bill. *Id.* However, this Court held that three provisions regulating adult entertainment that were added to the fourth version of the bill during the next-to-last day of the session "were not remotely within the original purpose of the bill, but rather constitute a textbook example of the legislative log-rolling that section 21 is intended to prevent." *Id.* Likewise, in this case, the multiple provisions relating to campaign finance, ethics and keys to the capitol dome are not logically connected or germane to procurement, which was the original purpose of SB 844. Consequently, SB 844 violates the original purpose requirement of article III, section 21.

 When the procedure by which the legislature enacted a bill violates the constitution, severance is appropriate if this Court is convinced beyond a reasonable doubt that the specific provisions in question are not essential to the efficacy of the bill. *St. Louis County v. Prestige Travel, Inc.,* 344 S.W.3d 708, 716 (Mo. banc 2011) (citing *Hammerschmidt v. Boone County,* 877 S.W.2d 98, 103–104 (Mo. banc 1994)). Severance is inappropriate if the valid provisions of the statute are so essentially and inseparably connected with, and so dependent on, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one. *Club Executives,* 208 S.W.3d at 889. Severance is also inappropriate if the court finds that the valid provisions, standing alone, are

incomplete and are incapable of being executed in accordance with the legislative intent. *Id.*

 In this case, severance is appropriate. This Court is convinced beyond a reasonable doubt that the sections relating to campaign finance, ethics and keys to the capitol dome are not essential to the efficacy of the properly enacted provisions pertaining to procurement. The properly enacted provisions pertaining to procurement are complete and are capable of being executed in accordance with the legislative intent. Therefore, consistent with result reached by the circuit court, the provisions of SB 844 relating to procurement, section 37.900 and section 34.048, are severed from the remainder of the bill and left intact. The judgment is affirmed.[2]

RUSSELL, BRECKENRIDGE, STITH, PRICE, and DRAPER, JJ., concur.

FISCHER, J., concurs in separate opinion filed.

ZEL M. FISCHER, Judge.

I concur in the principal opinion holding that Senate Bill No. 844 ("SB 844") violates the original purpose clause, article III, section 21, of the Missouri Constitution. Additionally, I agree with the circuit court that SB 844 also violates the single subject clause, article III, section 23, of the Missouri Constitution. Further, I write separately to explain why this Court should discontinue the judicially created doctrine of severance, which permits the adoption of procedurally unconstitutional legislation to be upheld against the clear will of the people as expressed in the Missouri Constitution. Each legislator

---

**2.** It is unnecessary to address the remaining points on appeal because the original purpose point is dispositive.

takes an oath to support our state Constitution, which includes these provisions.

## FACTS

SB 844 originally was introduced as "An Act [t]o amend chapter 37, RSMo, by adding thereto one new section relating to contracts for purchasing, printing, and services for statewide elected officials." SB 844 added § 37.900, allowing statewide elected officials to use the office of administration for determining the lowest bidder during procurement.

The Senate perfected SB 844 with two amendments. One amendment provided that the office of administration could not prohibit the purchase of "supplies from an authorized General Services Administration vendor . . . ." The second amendment required that each member of the Senate and the House be provided with a key to the capitol dome.

The House adopted Substitute No. 2 for SB 844. This version of SB 844 removed the keys to the capitol dome provision but retained the sections related to procurement. This version also repealed 29 sections of law and enacted 49 sections of law, including changes to chapters 105, 115, and 130, RSMo.[1] The title of the bill was changed to "relating to ethical administration of public institutions and officials, with penalty provisions and a contingent effective date for certain sections."

On May 11, 2010, three days before the end of the legislative session, the Senate refused to accept the House version of SB 844. A House and Senate conference committee submitted Conference Committee Substitute No. 3 for SB 844. On May 14, 2010, the last day of the legislative session, this version of SB 844 was truly agreed to and finally passed. This version of SB 844 was titled "An Act . . . relating to ethics, with penalty provisions." As passed, SB 844 retained § 37.900, allowing statewide elected officials to use the office of administration for procurement, and also included the keys to the capitol dome provision. The final version of SB 844 also repealed and enacted a number of sections in chapters 105, 115, and 130 and added a new section in chapter 575 making it a misdemeanor to obstruct an ethics investigation.

Legends Bank and John Klebba ("Respondents") filed a declaratory judgment action asserting that SB 844 violated the single subject requirement of article III, section 23, and the original purpose requirement of article III, section 21, of the Missouri Constitution. Respondents also asserted that SB 844 violated the First Amendment insofar as it bars political action committees from receiving money from Missouri state-chartered banks but allows political action committees to receive money from other entities and individuals.

The circuit court sustained Respondents' motion for judgment on the pleadings. The court found that adding "one new section relating to contracts for purchasing, printing, and services for statewide elected officials" was the original controlling purpose of SB 844; that SB 844 was enacted in violation of the single subject requirement set forth in article III, section 23; and that § 130.031.13 violated the First Amendment.[2] The court invalidated

---

1. Chapter 105 sets forth miscellaneous provisions pertaining to public officers and employees. Chapter 115 governs election authorities and the conduct of elections. Chapter 130 governs campaign finance disclosure.

2. *See Citizens United v. Fed. Election Comm'n,* —— U.S. ——, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010); *Fed. Election Comm'n v. Wis. Right to Life, Inc.,* 551 U.S. 449, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); *Randall v. Sorrell,* 548 U.S. 230, 126 S.Ct. 2479, 165 L.Ed.2d 482

SB 844 except for the procurement provisions of §§ 37.900 and 34.048, which it severed and allowed to stand. The State of Missouri appeals.

## LEGISLATIVE ACCOUNTABILITY AND TRANSPARENCY

Article III, section 21, of the Missouri Constitution prohibits amending any bill through its passage in either house as to change its original purpose. Article III, section 21, states in the pertinent part, "No law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose." Article III, section 23, states in the pertinent part, that "No bill shall contain more than one subject which shall be clearly expressed in its title...." [3] The purpose of these two sections is "to keep individual members of the legislature and the public fairly apprised of the subject matter of pending laws and to insulate the governor from 'take-it-or-leave-it' choices when contemplating the use of the veto power." *C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 326 (Mo. banc 2000) (quoting *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 325–26 (Mo. banc 1997)). Together, "these constitutional limitations function in the legislative process to facilitate orderly procedure, avoid surprise, and prevent 'logrolling,' in which several matters that would not individually command a majority vote are rounded up into a single bill to ensure passage." *Stroh Brewery Co.*, 954 S.W.2d at 325.

These constitutional limitations additionally serve "to defeat surprise within the legislative process. [They prohibit] a clever legislator from taking advantage of his or her unsuspecting colleagues by surreptitiously inserting unrelated amendments into the body of a pending bill." *Hammerschmidt v. Boone Cnty.*, 877 S.W.2d 98, 101 (Mo. banc 1994). "The single subject provision was first added to the Missouri Constitution in 1865" and has been included in every Missouri Constitution since. Alexander R. Knoll, *Tipping Point:* Missouri Single Subject Provision, 72 Mo. L.Rev. 1387, 1388 (2007). The original purpose provision was first added to the Missouri Constitution in 1875 and has been included in every Missouri Constitution since. These provisions were adopted by several states to prevent state legislatures from engaging in the same behaviors as early Congresses, which would harness the unpopular to the popular to get majority approval. *See id.; see also* Michael D. Gilbert, *Single Subject Rules and the Legislative Process*, 67 U. PITT. L.REV. 803, 811–12 (2006). The United States Constitution has not been amended to add similar provisions, and the contemporary Congress continues to add whatever provisions are necessary to obtain a majority vote to pass legislation. [4]

These two provisions provide the citizens of Missouri with necessary and valuable legislative accountability and transparency.

---

(2006), for recent decisions of the United States Supreme Court hostile to limitations on free speech in the political speech context.

3. This provision creates an exception for "bills enacted under the third exception" in article III, section 37, of the Missouri Constitution and general appropriation bills, "which may embrace the various subjects and accounts for which moneys are appropriated."

4. *See* Patient Protection and Affordable Care Act, Pub.L. No. 111–148, § 10201(c)(4), 124 Stat. 119, 918–19 (2010) (which has been referred to by its detractors as "The Cornhusker Kickback") *and* Patient Protection and Affordable Care Act, Pub.L. No. 111–148, § 2006(2), 124 Stat. 119, 284–85 (2010) (which has been referred to by its detractors as "The Louisiana Purchase").

## ORIGINAL PURPOSE

"The original purpose of the bill must, of course, be measured at the time of the bill's introduction." *C.C. Dillon Co.,* 12 S.W.3d at 327 (internal quotation omitted). As introduced, SB 844 related "to contracts for purchasing, printing, and services for statewide elected officials." The original version of SB 844 was consistent with this purpose in that it only added § 37.900, which allowed statewide elected officials to use the office of administration for determining the lowest bidder during procurement. No reasonable person would be "fairly apprised" by the title of SB 844 that, in its final form, it would contain provisions that provided each member of the Senate and the House with a key to the capital dome, repealed and enacted a number of sections in chapters 105, 115, and 130, and added a new section in chapter 575, making it a misdemeanor to obstruct an ethics investigation.

## SINGLE SUBJECT

"No bill shall contain more than one subject which shall be clearly expressed in its title...." Mo. Const. art. III, § 23. The main test for determining if a bill violates the single subject rule is laid out in *Hammerschmidt:* "a 'subject' within the meaning of article III, section 23, includes all matters that fall within or reasonably relate to the general core purpose of the proposed legislation." 877 S.W.2d at 102. "However, the single subject test is not whether individual provisions of a bill relate to each other. The constitutional test focuses on the subject set out in the title." *Fust v. Attorney Gen. for the State of Mo.,* 947 S.W.2d 424, 428 (Mo. banc 1997). "The dispositive question in determining whether a bill contains more than one subject is whether all provisions of the bill fairly relate to the same subject, have a natural connection therewith, or are incidents or means to accomplish its purpose."

*Id.* (internal quotations omitted). Further, "The determination of whether a bill violates the article III, section 23 single subject requirement is made concerning the bill as it is finally passed." *Stroh Brewery Co.,* 954 S.W.2d at 327.

In *Hammerschmidt,* the original purpose and single subject core of the bill was to "amend laws relating to elections." 877 S.W.2d at 103 (internal quotation omitted). The bill was amended during the legislative process to include a change to the form of county government, specifically to allow counties that met certain qualifications to adopt a county constitution. *Id.* This Court held "the bill sent by the legislature to the governor contained two subjects." *Id.* This Court further held, "The amendment authorizing a county to adopt a county constitution does not fairly relate to elections, nor does it have a natural connection to that subject." *Id.*

Here, as finally passed, SB 844 carried the title "An Act ... relating to ethics, with penalty provisions." The original purpose and single subject core of this bill, as reflected in the original title, was to add "one new section relating to contracts for purchasing, printing, and services for statewide elected officials." Like in *Hammerschmidt,* SB 844 was amended to include additional subjects, namely campaign finance, ethics, and who should have keys to the capital dome. These subjects do not fairly relate to "contracts for purchasing, printing, and services for statewide elected officials," nor does it have a natural connection to that subject.

## JUDICIALLY CREATED SEVERANCE

Under the current state of the law as developed in *Hammerschmidt,* the circuit court and principal opinion considered severance of the provisions of SB 844 that

relate to campaign finance, ethics, and keys to the capital dome because these provisions are unconstitutional pursuant to article III, sections 21 and 23. Pursuant to *Hammerschmidt*, when the procedure by which the legislature enacted a bill violates the constitution, severance is appropriate only when the circuit court or this Court "is convinced beyond a reasonable doubt" that the specific provisions in question are not essential to the efficacy of the bill and that the legislature would have passed the bill without the additional provisions. 877 S.W.2d at 103–04.[5]

According to a fairly recent law review article, there had already "been 56 Missouri Supreme Court cases [alone] that consider[ed] the implication of the single subject provision...." Knoll, 72 Mo. L.Rev. at 1393. In addition to the 56 cases that are described in this article, eight more opinions addressing the single subject, clear title, or original purpose provi-

sions have been issued recently by this Court. *See St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708 (Mo. banc 2011); *Schaefer v. Koster*, 342 S.W.3d 299 (Mo. banc 2011); *Rentschler v. Nixon*, 311 S.W.3d 783 (Mo. banc 2010); *State v. Salter*, 250 S.W.3d 705 (Mo. banc 2008); *Jackson Cnty. Sports Complex Auth. v. State*, 226 S.W.3d 156 (Mo. banc 2007); *Trout v. State*, 231 S.W.3d 140 (Mo. banc 2007); *Jackson Cnty. v. State*, 207 S.W.3d 608 (Mo. banc 2006); and *Missouri Ass'n of Club Execs., Inc. v. State*, 208 S.W.3d 885 (Mo. banc 2006). That number continues to rise annually, despite an extremely short statute of limitations,[6] because the legislature frequently ignores these clearly expressed constitutional provisions. If our circuit courts or this Court are willing to continue to employ the severance doctrine to save legislation enacted in violation of our state Constitution, then individual legislators responding to special interest

---

**5.** Section 1.140, RSMo 2000, does not support the doctrine of severability of bills enacted in violation of the procedural mandates of article III, sections 21 and 23. Section 1.140 provides in the pertinent part for the severance of "valid provisions of the statute" unless "it cannot be presumed the legislature would have enacted the valid provisions without the void one." As *Hammerschmidt* pointed out, when "the procedure by which the legislature enacted a bill violates the Constitution, severance is a more difficult issue." 877 S.W.2d at 103. In other words, if all of the provisions of a particular statute were enacted in a manner banned by the Missouri Constitution, should any of the provisions be considered valid? This question is quite different than what § 1.140 is intended to address, which is the circumstance when a statute has been enacted in a procedurally constitutional manner, but later some of the provisions of the statute are found by a court of competent jurisdiction to be substantively invalid based on the U.S. Constitution or the Missouri Constitution. Nevertheless, this Court developed a preference to sever bills and uphold some of the provisions because "Attacks against legislative action founded on constitutionally im-

posed procedural limitations are not favored." *Id.* at 102.

**6.** Section 516.500 provides:

No action alleging a procedural defect in the enactment of a bill into law shall be commenced, had or maintained by any party later than the adjournment of the next full regular legislative session following the effective date of the bill as law, unless it can be shown that there was no party aggrieved who could have raised the claim within that time. In the latter circumstance, the complaining party must establish that he or she was the first person aggrieved or in the class of first persons aggrieved, and that the claim was raised not later than the adjournment of the next full regular legislative session following any person being aggrieved. In no event shall an action alleging a procedural defect in the enactment of a bill into law be allowed later than five years after the bill or the pertinent section of the bill which is challenged becomes effective.

This statute of limitations was patterned after the concurring opinion by Judge Holstein in *Hammerschmidt*, 877 S.W.2d at 105.

groups or their own self interest (for example, in this case for a set of keys to the capital dome) will have no incentive to follow the clear and express procedural mandates of the Missouri Constitution.

In addition to encouraging principled, constitutional behavior on the part of each sponsoring legislator, the abolition of the judicially created doctrine of severance would also encourage principled, constitutional behavior on the part of the majority of legislators supporting a popular bill to guard against the adding of unrelated amendments that, by themselves, do not garner majority support for fear that the provisions of the legislation that did have majority support would be invalidated.

Finally, applying the judicially created doctrine of severance in these cases dealing with procedural mandates of our Missouri Constitution effectively violates the separation of powers[7] protected by the United States Constitution[8] and article II, section 1, of the Missouri Constitution.[9] The separation of powers is a key component of our democracy and should be honored and protected. When a circuit court or this Court does not invalidate the entire bill, which has been enacted in violation of the original purpose, single subject, or clear title provisions of our state Constitution and severs only a portion of the bill, it may be subverting the legislative process and allowing legislation to survive that might not have received enough votes

7. I previously have expressed this view. *St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 716 n. 6 (Mo. banc 2011), and *Schaefer v. Koster*, 342 S.W.3d 299, 306 n. 9 (Mo. banc 2011) (J. Fischer dissenting). It also is supported in legal periodicals.

> Another argument in favor of striking down the entire bill as unconstitutional is motivated by a desire to protect the separation of powers between the legislature and the judiciary. Since legislation is often the result of much debate and political tradeoffs, if a judge takes away only one provision of a bill, presumably, at least one legislator would be upset. In fact, if this provision were excised prior to passage, the bill might not have had enough support to garner enough votes to pass. Therefore, if the courts sever only a portion of a bill, they may be subverting the legislative process and allowing legislation that might not have received enough votes to become law.

Alexander R. Knoll, *Tipping Point:* Missouri Single Subject Provision, 72 Mo. L.Rev. 1387, 1392–93 (2007); *see also* Michael D. Gilbert, *Single Subject Rules and the Legislative Process*, 67 U. Pitt. L.Rev. 803, 867 (2006); for further discussion of why severance of legislation may not be appropriate, *see* Martha J. Dragich, *State Constitutional Restrictions on Legislative Procedure: Rethinking the Analysis of Original Purpose, Single Subject, and Clear Title Challenges*, 38 Harv. J. on Legis. 103 (2001).

8. While no specific separation of power clause exists in the United States Constitution, "the principle of separation of powers was not simply an abstract generalization in the minds of the Framers [of the United States Constitution]: it was woven into the documents that they drafted in Philadelphia in the summer of 1787." *I.N.S. v. Chadha*, 462 U.S. 919, 946, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (internal citation omitted). Furthermore, "[t]he Framers perceived that '[t]he accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny.' " *Id.* at 960, 103 S.Ct. 2764 (J. Powell concurring) (quoting The Federalist No. 47, at 324 (James Madison) (J. Cooke ed.1961)).

9. Article II, section 1, of the Missouri Constitution, provides:

> The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

 

to become law.[10] In essence, severance, which presumably legislators favor because it allows a portion of their legislation to survive, amounts to judges being allowed to draft legislation, which presumably legislators do not favor. The legislature can have the final say on these matters if they enact legislation in accord with the procedures prescribed in our Constitution.

Furthermore, invalidating only a portion of the bill may be subverting the governor's veto authority by allowing legislation to survive that might have been vetoed pursuant to article III, section 31, of the Missouri Constitution, if it was not harnessed to the severed legislation. *Hammerschmidt*, 877 S.W.2d at 102; *C.C. Dillon Co.*, 12 S.W.3d at 326; *Stroh Brewery Co.*, 954 S.W.2d at 325–26.

## CONCLUSION

In my view, as previously forecast in *Prestige Travel, Inc.*, 344 S.W.3d at 716 n. 6 and *Schaefer*, 342 S.W.3d at 306 n. 9 (J. Fischer dissenting), the judicially created doctrine of severance should no longer be used to save any legislation enacted in contravention of article III, section 21, or article III, section 23, of the Missouri Constitution, because it has encouraged a lack of legislative accountability and transparency and has permitted the legislature to thwart the will of the people by openly violating clear and express procedural provisions of the Missouri Constitution.[11] In my view, it also effectively violates the

separation of powers, which is central to the proper functions of our national and state government.

---

10. I agree with the circuit court and this Court that the provisions allowed to stand in this case beyond a reasonable doubt would have passed by a majority vote of both houses of the legislature, and, therefore, I concur in the result.

11. *Hammerschmidt* recognized that these constitutional procedural provisions are "mandatory, not directory," yet allowed for severance partly because "Attacks against leg-

islative action founded on constitutionally imposed procedural limitations are not favored" and partly because it presumed that the legislature would be self-motivated to comply with these constitutional provisions. 877 S.W.2d at 102. The presumption of self-motivation on the part of the legislature to follow the constitution procedural provisions to enact legislation is no longer justified and, accordingly, neither is severance.