

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| RONALD J. CALZONE, | ) | *Opinion issued October 1, 2019* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC97132 |
| | ) | |
| INTERIM COMMISSIONER OF THE | ) | |
| DEPARTMENT OF ELEMENTARY AND | ) | |
| SECONDARY EDUCATION | ) | |
| ROGER DORSON, IN HIS OFFICIAL | ) | |
| CAPACITY, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | | |
| and | | |
| | | |
| RONALD J. CALZONE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC97211 |
| | ) | |
| DIRECTOR OF THE MISSOURI | ) | |
| DEPARTMENT OF AGRICULTURE | ) | |
| CHRIS CHINN, IN HER OFFICIAL | ) | |
| CAPACITY, et al., | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

## APPEALS FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

Ronald J. Calzone (hereinafter, "Calzone") appeals the circuit court's judgment affirming the constitutional validity of Senate Bill No. 638 (2016) (hereinafter, "SB 638") and Senate Bill No. 665 (2016) (hereinafter, "SB 665").[1] Calzone argues these bills are unconstitutional because they violate article III, section 21 of the Missouri Constitution, which prohibits the legislature from changing the original purpose of a bill during passage, and article III, section 23 of the Missouri Constitution, the single subject requirement. Calzone further argues substantive changes to the bills' titles during the legislative process violate both constitutional provisions. This Court holds: (1) the bills maintained their original purpose throughout the legislative process; (2) the bills did not violate the single subject requirement; and (3) Calzone failed to state a claim for relief regarding his substantive title change claim. The circuit court's judgments are affirmed.[2]

**Factual and Procedural History**

On January 6, 2016, SB 638 was introduced. SB 638's original title was "An act to repeal section 170.011, RSMo, and to enact in lieu thereof two new sections relating to civics education." During the legislative process, each chamber of the General Assembly adopted or introduced amendments to SB 638, resulting in a conference committee drafting a compromise bill. The compromise bill contained the original legislation to repeal section 170.011 and to enact two new sections related to civics education. The compromise bill

---

[1] Because these cases have identical procedural postures and issues on appeal, this Court refers to the bills collectively in the interest of judicial economy and differentiates the bills only when necessary.

[2] This Court has exclusive jurisdiction over an appeal involving the constitutional validity of a statute. Mo. Const. art. V, sec. 3.

also included additional provisions concerning new curriculum offerings; programs to assist students, including those with dyslexia; reports about educational quality assurance; charter school certification and funding; school board governance; statutory bonding requirements for school district officers; and expansion of the A+ Schools Program to include nonpublic schools and provide nonpublic school students monetary benefits for postsecondary education. SB 638's final title, as enacted, is "An act to repeal [twenty] sections … and to enact in lieu thereof twenty-nine new sections relating to elementary and secondary education, with an effective date for a certain section." SB 638 will result in the expenditure of state funds.

On January 6, 2016, SB 665 was introduced. SB 665's original title was "An act to repeal section 261.235, RSMo, and to enact in lieu thereof one new section relating to the establishment of a fee structure for sellers electing to use the AgriMissouri trademark associated with Missouri agricultural products." SB 665 underwent amendments during the legislative process, including the repeal of section 261.235 and enactment of a new section regarding the fee structure to use the AgriMissouri trademark. The amendments also contained provisions concerning certain agricultural tax credits and incentives, provisions related to the AgriMissouri and Farm-to-Table programs, and amendments to the statute regulating the petroleum inspection fee used to fund oversight activities by the department of agriculture. SB 665's final title, as enacted, is "An act to repeal [nine] sections … and to enact in lieu thereof ten new sections relating to agriculture." SB 665 will result in the expenditure of state funds.

Calzone is a Missouri citizen and taxpayer. In May 2017, Calzone, acting *pro se*, filed two separate, but nearly identical, declaratory judgment actions challenging the constitutional validity of the bills and raising substantially the same counts in each petition.[3] In count I, Calzone alleged the original purpose of the bills were changed by amendments such that, as enacted, the bills violated article III, section 21. In count II, Calzone alleged the final bills violated the single subject requirement of article III, section 23. In count III, Calzone claimed the substantive changes to the bills' titles during the legislative process violated article III, sections 21 and 23 because allowing substantive amendments to the bills' titles defeated the purpose of these constitutional provisions.

Defendants filed motions to dismiss Calzone's petitions for lack of standing or, alternatively, to obtain judgment on the pleadings on all counts. Calzone filed motions for summary judgment. The circuit court determined Calzone had standing to sue as a Missouri taxpayer impacted by the expenditure of state funds. The circuit court sustained Defendants' motions for judgment on the pleadings on counts I and II, finding the bills as

---

[3] At the time Calzone filed his lawsuits, he named several defendants as parties. In October 2017, the circuit court dismissed certain defendants. During the pendency of the litigation, certain office changes occurred requiring the circuit court to substitute different named parties. When the circuit court entered its judgment regarding SB 638, the defendants were Roger Dorson, in his official capacity as interim commissioner of the Missouri Department of Elementary and Secondary Education, and Steve Corsi, in his official capacity as director of the Missouri Department of Social Services. When the circuit court entered its judgment regarding SB 665, the defendants at the time of judgment were Chris Chinn, in her official capacity as director of the Missouri Department of Agriculture, Joel Walters, in his official capacity as the director of the Missouri Department of Revenue, and Roger Dorson, in his official capacity as Interim Commissioner of the Missouri Department of Elementary and Secondary Education. The defendants from both lawsuits will be referred to collectively as "Defendants" for clarity purposes.

enacted did not violate the constitution's original purpose or single subject requirements. The circuit court sustained Defendants' motions to dismiss count III for failure to state a claim. The circuit court overruled Calzone's summary judgment motions. Calzone appeals both judgments.

**Standard of Review**

When analyzing challenges to the constitutional validity of statutes, this Court is guided by well-established standards. "Constitutional challenges to a statute are reviewed *de novo*." *St. Louis Cty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 712 (Mo. banc 2011) (quoting *Rentschler v. Nixon*, 311 S.W.3d 783, 786 (Mo. banc 2010)). Constitutional attacks based upon the procedural limitations contained in article III, sections 21 and 23 are not favored. *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 326 (Mo. banc 1997). "A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *Coop. Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 578 (Mo. banc 2017) (quoting *Rentschler*, 311 S.W.3d at 786). Calzone bears the burden of establishing the bills are unconstitutional. *C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 327 (Mo. banc 2000).

**Introduction**

Calzone implores this Court to clarify the differences between the constitutional limitations contained in article III, sections 21 and 23. Article III, section 21 provides, "[N]o bill shall be so amended in its passage through either house as to change its original purpose." Article III, section 23 provides, "No bill shall contain more than one subject which shall be clearly expressed in its title …." Calzone maintains "purpose" and "subject"

5

as used in these article III provisions are "virtually interchangeable" and require the same analysis.

Calzone's confusion is understandable, given that both sections have been recognized as ways of preventing the legislature from employing tactics that mislead fellow legislators or the public regarding the purpose, subject, or effect of the proposed legislation. *See State v. Ludwig*, 322 S.W.2d 841, 847 (Mo. banc 1959) (explaining the original purpose and single subject requirements were designed to prevent enactment of legislation that may deceive legislators or the public regarding its effect); *Fust v. Attorney Gen. for the State of Mo.*, 947 S.W.2d 424, 429 (Mo. banc 1997) (stating, "The 'clear title' provision, like the 'single subject' restriction, was designed to prevent fraudulent, misleading, and improper legislation …."); *St. Louis Health Care Network v. State*, 968 S.W.2d 145, 147 (Mo. banc 1998) (stating the purpose of the clear title requirement "is to keep individual members of the legislature and the public fairly apprised of the subject matter of pending laws").

Compounding Calzone's confusion is the sometimes interchangeable terminology and intertwined legal analysis concerning original purpose, single subject, and clear title in prior cases. *See Hammerschmidt v. Boone Cty.*, 877 S.W.2d 98, 101 n.2 (Mo. banc 1994) (stating, "In considering challenges under section 23, this Court has sometimes combined the two limitations for analytical purposes," and citing examples); *St. Louis Health Care Network*, 968 S.W.2d at 148-49 (applying a single subject analysis to determine a violation of the clear title requirement); *Home Builders Ass'n of Greater St. Louis v. State*, 75 S.W.3d 267, 270 n.1 (Mo. banc 2002) (analogizing single subject cases with a clear title challenge and recognizing this Court's discussion of the single subject requirement was "helpful" in

6

analyzing a clear title violation, despite their distinctions); *Trout v. State*, 231 S.W.3d 140, 146 (Mo. banc 2007) (finding "single subject analysis is similar to original purpose analysis"); and *Coop. Home Care*, 514 S.W.3d at 580  (recognizing a single subject challenge must determine a bill's "general core purpose," but then repeatedly discussing how the bill's *original* purpose was connected to, related to, or germane to the bill as passed).[4]

Despite interchangeable language, these two constitutional provisions contain three distinct requirements. *See Hammerschmidt*, 877 S.W.2d at 101 n.2 (explaining "[article III,] section 23 contains two, separate procedural limitations on the legislature"—single subject and clear title); *Drury v. City of Cape Girardeau*, 66 S.W.3d 733, 738 (Mo. banc 2002) (recognizing article III, section 23's two provisions serve a similar purpose but focus on different elements); *Am. Eagle Waste Indus., LLC v. St. Louis Cty.*, 379 S.W.3d 813, 825 (Mo. banc 2012) (stating article III, section 23 "limits the legislature in two distinct but related ways"). Moreover, "[t]he mere fact that two subjects in a bill can be reconciled as part of a broader subject, and thus satisfy original purpose or single subject challenges, does not, in itself, mean that the broader subject has been clearly expressed in the title of a bill." *Nat'l Solid Waste Mgmt. Ass'n v. Dir. of Dep't of Nat. Res.*, 964 S.W.2d 818, 821 (Mo. banc 1988). This opinion endeavors to provide clearer delineations among these constitutional limitations.

---

[4] The aforementioned cases merely serve as examples of instances in which language lacked exacting precision or clarity when analyzing these intertwined constitutional requirements. It is imperative to note this opinion does not hold these cases were wrongly decided or the analyses contained therein are no longer valid.

**Article III, Section 21 – Original Purpose**

Calzone argues both bills violate article III, section 21, which prevents a bill from being so amended during the legislative process that it changes the bill's original purpose. The framers of the 1875 Constitution stated the policy behind enacting the first original purpose provision found in article IV, section 25 was "[t]o afford security against hasty legislation and guard against the possibility of bills becoming laws, which have not been fairly and considerately passed upon, wholesome restrictions are thrown around the law makers and greater particularity required in the enactment of laws than heretofore." *Allied Mut. Ins. Co. v. Bell*, 185 S.W.2d 4, 8 (Mo. 1945) (quoting *Address to Accompany the Constitution*, Vol. II, Journal Missouri Constitutional Convention of 1875, 878 (Loeb-Shoemaker 1920)). Article III, section 21 "is designed to prevent 'the enactment of amendatory statutes in terms so blind that legislators … [would be] deceived in regard to their effects, and the public, from difficulty in making the necessary examination and comparison, [would fail] to become apprised of the changes made in the law.'" *Ludwig*, 322 S.W.2d at 847 (quoting 1 Thomas M. Cooley, *Constitutional Limitations* 314 (1927)).

Article III, section 21 "was not designed to inhibit the normal legislative processes in which bills are combined and additions necessary to comply with the legislative intent are made." *Blue Cross Hosp. Serv. Inc. of Mo. v. Frappier*, 681 S.W.2d 925, 929 (Mo. banc 1984) (vacated on other grounds by *Blue Cross Hosp. Serv. Inc. of Mo. v. Frappier*, 472 U.S. 1041 (1985)); *Stroh Brewery*, 954 S.W.2d at 326. "Were this otherwise … the process of legislation would be seriously hampered and embarrassed by every amendment which might be offered, however germane it might be to the idea as formulated in the first draft

8

of the bill." *State ex rel. McCaffery v. Mason*, 55 S.W. 636, 640 (Mo. banc 1900). "This Court liberally interprets the procedural limitation of original purpose." *Mo. State Med. Ass'n v. Mo. Dep't of Health*, 39 S.W.3d 837, 840 (Mo. banc 2001). "[T]his Court has consistently rejected 'original purpose' challenges during the … history of this constitutional prohibition" in cases in which the content of the introduced bill remained substantially intact throughout the legislative process as germane amendments were added. *Id.* (citing cases). Accordingly, this Court rarely has invalidated legislation based upon an original purpose challenge. *See Allied Mut.,* 185 S.W.2d 4; *Mo. Ass'n of Club Execs. v. State*, 208 S.W.3d 885 (Mo. banc 2006); *Legends Bank v. State*, 361 S.W.3d 383 (Mo. banc 2012).

"Purpose" is the key word of this constitutional provision. *Ludwig*, 322 S.W.2d at 847. "[P]urpose means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated." *McCaffery*, 55 S.W. at 640; *Prestige Travel,* 344 S.W.3d at 715. "[T]he general purpose is often interpreted as an overarching purpose …." *McEuen ex rel. McEuen v. Mo. State Bd. of Educ.*, 120 S.W.3d 207, 210 (Mo. banc 2003). Article III, section 21's "restriction is against the introduction of matters not germane to the object of the legislation or unrelated to its original subject." *Akin v. Dir. of Revenue*, 934 S.W.2d 295, 302 (Mo. banc 1996). "'Germane' is defined as: 'in close relationship, appropriate, relative, pertinent. Relevant or closely allied.'" *C.C. Dillon*, 12 S.W.3d at 327 (quoting 687 Black's Law Dictionary (6th ed. 1990)). Accordingly, "[a]lterations that bring about an extension or limitation of the scope of the

9

bill are not prohibited," provided the changes are germane. *Stroh Brewery*, 954 S.W.2d at 326.

*Earliest Title and Contents*

Calzone argues the circuit court erred in entering judgment on the pleadings on c count I by using the wrong standard for establishing each bill's original purpose. Calzone argues the circuit court ignored authority holding a bill's original purpose is established by the bill's earliest title and contents at the time the bill is introduced, as this Court held in *Club Executives* and *Legends Bank*.

"The title, though performing a most important function, is still not strictly a part of the act proper." *Allied Mut.*, 185 S.W.2d at 8 (quoting *State ex rel. Aull v. Field*, 24 S.W. 752, 755 (Mo. banc 1894)); *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 38 (Mo. banc 1982). "[T]he Constitution does not require that the original purpose be stated anywhere, let alone in the title as introduced." *Mo. State Med. Ass'n*, 39 S.W.3d at 839. Moreover, no constitutional provision requires an act to retain the same title throughout the legislative process. *Allied Mut.*, 185 S.W.2d at 8. Hence, "modification of the title to reflect the added provisions is permissible." *Blue Cross Hosp.*, 681 S.W.2d at 929. "[E]xpanding the title of a bill to reflect the commonality of all of the subjects contained in the bill is not a novel proposition. It is the process the legislature has routinely used to accommodate amendments to a bill and a process this Court has consistently approved." *Nat'l Solid Waste Mgmt.*, 964 S.W.2d at 821.

A bill's original purpose is measured at the time of the bill's introduction. *Stroh Brewery*, 954 S.W.2d at 326; *C.C. Dillon*, 12 S.W.3d at 327; *McEuen*, 120 S.W3d at

10

210.  This Court will compare the purpose of the original bill as introduced with the bill as passed to determine whether it violates article III, section 21.  *Westin Crown Plaza Hotel Co. v. King*, 664 S.W.2d 2, 5 (Mo. banc 1984).  "[A] bill's original purpose is not limited to what is stated in the bill's original title …." *Jackson Cty. Sports Complex Auth. v. State*, 226 S.W.3d 156, 160 (Mo. banc 2007).

In *Club Executives*, 208 S.W.3d at 888, this Court examined the bill's earliest title and contents to determine whether its original purpose changed during the legislative process.  The original bill title was related to "intoxication-related traffic offenses," while the bill as enacted concerned "alcohol-related offenses."  *Id.* at 887 (emphasis omitted).  Cursory examination of the two titles revealed a similarity of purpose concerning alcohol-related offenses.  *Id*. at 888.  However, this Court also examined the bill's contents, which included three amendments purporting to regulate the adult entertainment industry.  *Id*. at 887-88.  This Court held these amendments "were not remotely within the original purpose of the bill, but rather constitute a textbook example of the legislative log-rolling that section 21 is intended to prevent."  *Id*. at 888.

This Court applied the analysis from *Club Executives* to find an original purpose violation occurred in *Legends Bank*.  In that case, the bill's earliest title related to "contracts for purchasing, printing, and services for statewide elected officials," while the bill as enacted related to "ethics, with penalty provisions."  *Legends Bank*, 361 S.W.3d at 385.  One of the amendments included a provision requiring legislators be provided with keys to the capitol dome.  *Id*.  This Court determined the bill's earliest title and contents "demonstrate[d] the original purpose pertained to procurement of necessary goods and

11

services for elected officials." *Id*. at 386. The provisions in the enacted bill related to ethics, campaign finance restrictions, and keys to the capitol dome, therefore, were not germane to the bill's original purpose. *Id*.

Applying the analysis from *Club Executive* and *Legends Bank*, Calzone argues the bills at issue violate article III, section 21. Calzone maintains SB 638's earliest title and contents demonstrate it was focused solely on civics education as its original purpose. Hence, Calzone believes SB 638's amendments to the title and contents changed the bill's original purpose, specifically as it relates to expanding the A+ Schools Program to include nonpublic schools and providing monetary benefits for postsecondary education. This Court disagrees. SB 638's earliest title and contents demonstrate its purpose was to promote education in Missouri and modify programs administered by state education boards and departments. The amendments to SB 638 are germane to education, including those related to the A+ Schools Program. These germane amendments merely extended the scope of the bill as introduced and did not run afoul the original purpose requirement.

Similarly, Calzone argues SB 665's earliest title and contents demonstrate it was focused solely on establishing a fee structure for use of the AgriMissouri trademark. Calzone believes SB 665's amendments to the title and contents changed the bill's original purpose, specifically by including the amendments to the petroleum inspection fee statute, which he alleges has nothing to do with agriculture. Again, this Court disagrees. SB 665's earliest title and contents demonstrate a purpose to promote Missouri's agricultural industry and amend programs administered by the department of agriculture. The amendments to SB 665 are germane to agriculture, including the petroleum inspection fee,

12

which is a means to fund oversight activities by the director of the department of agriculture.

This conclusion is consistent with this Court's precedent of broadly and liberally interpreting a bill's original purpose so as to uphold the bill's constitutional validity. *See Lincoln Credit*, 636 S.W.2d at 38 (holding a bill "relat[ed] to certain credit transactions" retained its original purpose addressing interest rate restrictions because both were "naturally related in the legislature's attempt to govern credit transactions"); *Blue Cross Hosp.*, 681 S.W.2d at 929 (holding a bill prohibiting insurance and health service entities from discriminating against psychologists that was amended to add broader antidiscrimination measures was not "a substantial departure from the original antidiscriminatory purpose"); *Akin*, 934 S.W.2d at 302 (holding a bill's original purpose of promoting education was not changed with the addition of taxation provisions, which were a means of funding education programs); *Stroh Brewery*, 954 S.W.2d at 325-26 (holding a bill providing for vintage wine auctions had an original purpose of amending the state's liquor control law, and an amendment adding malt liquor labeling requirements did not violate article III, section 21); *C.C. Dillon*, 12 S.W.3d at 327-28 (holding a bill "relat[ed] to transportation" did not lose its original purpose with an amendment adding a provision regulating outdoor advertising for highway billboards); *Mo. State Med. Ass'n*, 39 S.W.3d at 840 (holding a bill requiring health insurers to cover pelvic, prostate, and colorectal examinations and other cancer screenings had an original purpose to mandate health services for serious illnesses, including cancer, and an amendment requiring persons receiving breast implants to receive standard pre-operation information about the

advantages, disadvantages, and risks, including cancer, was "logically relate[d]" to that original purpose and did not violate article III, section 21); *Jackson Cty. Sports Complex*, 226 S.W.3d at 161 (finding a bill's general, overarching purpose was to regulate political subdivisions and inclusion of an amendment regulating sports complex authorities did not violate its original purpose).

*Titles that Descend to Particulars*

Calzone next argues the bills' original titles descended into particulars, which he believes requires this Court to construe the bills' original purpose more narrowly. The title of the bill plays a function in the original purpose analysis:

> A title that is broadly worded as to purpose will accommodate many amendments that may garner sufficient support for the bill's passage. Alternatively, a title that is more limited as to purpose may protect the bill from undesired amendments, but may lessen the ability of the bill to garner sufficient support for passage. Because we are required to uphold the constitutionality of a statute against attack unless the statute clearly and undoubtedly violates the constitution, only clear and undoubted language limiting purpose will support an article III, section 21 challenge.

*Stroh Brewery*, 954 S.W.2d at 326. "For the sole purpose of" is an example of language of specific limitation which would support an original purpose challenge. *Id*.

Here, the bills' original titles do not contain any specific limiting language indicating a restriction of original purpose to *only* civics education or *only* establishing a fee structure for use of the AgriMissouri trademark. Calzone concedes he never claimed the statutes listed in the bills' titles limited the purpose of the bill. Instead, Calzone argues the circuit court ignored authority holding that when a bill's title descends to particulars, the particulars stated become the subject of the act and the act must conform to the title as

expressed by the particulars. Calzone contends the bills' original titles descend into details and particulars, precluding amendments from being added that are inconsistent with those details and particulars. Calzone cites lengthy excerpts from five cases to support his argument.

Calzone's reliance on these cases is misplaced because the analysis concerning whether a title descends into details and particulars is employed in clear title challenges, not original purpose challenges. *See State ex rel. Niedermeyer v. Hackmann*, 237 S.W. 742, 743-44 (Mo. banc 1922) (invalidating a statute on clear title grounds because the title contained two particulars of one subject and the challenged provision was not encompassed by those particulars); *City of Columbia v. State Pub. Serv. Comm'n*, 43 S.W.2d 813, 816 (Mo. 1931) (invalidating a statute on clear title grounds because the title was not confined to a general statement but descended to particulars, and the provisions that went beyond those particulars violated the constitution); *Graves v. Purcell*, 85 S.W.2d 543, 549-50 (Mo. banc 1935) (analyzing the title's components under the single subject and clear title requirements of article IV, section 28 of the 1875 Constitution); *State ex rel. Fire Dist. of Lemay v. Smith*, 184 S.W.2d 593, 596 (Mo. banc 1945) (invalidating a statute on clear title grounds because the act contained subjects not included in the particulars of the title in violation of article IV, section 28 of the 1875 Constitution); *Fust*, 947 S.W.2d at 428-29 (analyzing the title's components under clear title provisions of article III, section 23); *Nat'l Solid Waste Mgmt.*, 964 S.W.2d at 821 (explaining the rationale behind the clear title provision and how to analyze a title that descends into particulars and details). Hence, it is immaterial whether a bill's title descends into particulars for purposes of analyzing

15

whether a bill's original purpose was changed during the legislative process, especially when article III, section 21 contains no requirement a bill's original purpose be stated anywhere, let alone in the title. The circuit court did not err in failing to address this issue, nor did it err in finding these bills complied with article III, section 21.

**Article III, Section 23 – Single Subject**

Calzone next argues the bills are unconstitutional because they both contain more than one subject. Article III, section 23 provides, "No bill shall contain more than one subject which shall be clearly expressed in its title …." This constitutional limitation protects the state, legislators, and citizens, in that

> [t]he practice of comprising in one bill subjects of a diverse and antagonistic nature, in order to combine in its support members who were in favor of particular measures, but neither of which measures could command the requisite majority on its own merits, was found to be not only a corrupting influence in the legislature itself, but destructive of the best interests of the [s]tate. But this was not more detrimental than that other pernicious practice by which, through dexterous and unscrupulous management, designing [legislators] inserted clauses in the bodies of bills, of the true meaning of which the titles gave no indication, and by skillful maneuvering urged them on to their passage. These things led to fraud, surprise, and injury, and it was found necessary to apply a corrective in the shape of a constitutional provision. But while the clause was embodied in the organic law for the protection of the [s]tate and the legislature, it was not designed to be unnecessarily restrictive in its operation, nor to embarrass legislation by compelling a needless multiplication of separate bills.

*City of St. Louis v. Tiefel*, 42 Mo. 578, 590 (Mo. 1868).

This Court has analyzed the single subject requirement numerous times since its inception in 1865 and has "attempted to avoid an interpretation of the Constitution that will 'limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law.'" *Hammerschmidt*, 877 S.W.2d at 102 (quoting *State v. Miller*,

16

45 Mo. 495, 497 (Mo. 1870)). "A very strict and literal interpretation would lead to many separate acts relating to the same general subject, and thus produce an evil quite as great as the mischief intended to be remedied; hence a liberal interpretation and application" is warranted. *State ex rel. Attorney Gen. v. Miller*, 13 S.W. 677, 678 (Mo. 1890); *Am. Eagle Waste Indus.*, 379 S.W.3d at 825. Compliance with the single subject requirement is mandatory, not directory. *Corvera Abatement Techs., Inc. v. Air Conservation Comm'n*, 973 S.W.2d 851, 861 (Mo. banc 1998).

"[T]his Court's test for determining whether a bill violates the single subject requirement of article III, section 23, has remained virtually the same since 1869." *Hammerschmidt*, 877 S.W.2d at 102. A bill does not violate the single subject requirement "[s]o long as 'the matter is germane, connected, and congruous.'" *Id.* (quoting *State v. Mathews*, 44 Mo. 523, 527 (Mo. 1869)). This Court will examine "whether all provisions of the bill fairly relate to the same subject, have natural connection therewith or are incidents or means to accomplish its purpose." *Westin Crown Plaza Hotel*, 664 S.W.2d at 6. "[M]atters which are incongruous, disconnected, and without any mutual relation to each other must not be joined in one bill …." *Miller*, 13 S.W. at 678. "[T]he words 'one subject' must be broadly read, but not so broadly that the phrase becomes meaningless." *Hammerschmidt*, 877 S.W.2d at 102.

While article III, section 21 does not require the bill's original purpose to be stated in the title or anywhere else in the bill, article III, section 23 specifically mandates the single subject of a bill shall be clearly expressed in its title. This Court examines the bill as it is finally passed to determine whether it violates the single subject requirement. *Stroh*

17

*Brewery*, 954 S.W.2d at 327; *Mo. State Med. Ass'n*, 39 S.W.3d at 840. First, this Court looks to the bill's title to determine its subject. *Id*. "If the bill's title is not too broad or amorphous to identify the single subject of the bill, then the bill's title serves as the touchstone for the constitutional analysis." *Mo. Health Care Ass'n v. Attorney Gen. of Mo.*, 953 S.W.2d 617, 622 (Mo. banc 1997). This Court will examine whether the individual provisions relate to the subject expressed in the title, not whether the individual provisions relate to each other. *Fust*, 947 S.W.2d at 428; *C.C. Dillon*, 12 S.W.3d at 328.

*Subject Determined by the Title*

Calzone argues the circuit court erred in finding the bills did not violate the single subject requirement because the circuit court failed to take into account cases in which the bill's original purpose changed during the legislative process. This argument fails because this Court holds the bills' original purposes were not changed during the legislative process and the original purposes are expressed properly in the bills' respective titles. Hence, application of these cases would be irrelevant.

Calzone next argues the circuit court ignored precedent holding the controlling subject of a bill is determined by the bills' original title and contents, not the title as revised to suit a new, broader subject. However, as stated previously, "[t]he bill as enacted is the only version relevant to the single subject requirement." *Mo. State Med. Ass'n*, 39 S.W.3d at 840. Because the bills' titles properly expressed and remained faithful to the bills' original purpose, this Court need not look beyond the final bill titles to determine each bill's subject. *Id*.

18

Calzone repeats his arguments that the bills' original titles descended into particulars and dictate the controlling subject for each bill. Calzone faults the circuit court for ignoring the original bill titles in favor of the final bill titles when determining the bills' subject. Again, Calzone confuses the analysis to be applied when bringing a single subject challenge and a clear title challenge. While the single subject and clear title requirements are both contained in article III, section 23, they are "distinct limitations on the procedures by which the general assembly may pass legislation." *Carmack v. Dir., Mo. Dep't of Agric.*, 945 S.W.2d 956, 959 (Mo. banc 1997). Calzone concedes he has not brought a clear title challenge to these bills and does not argue the bills' titles are too broad or amorphous for this Court to determine the bills' subjects.[5] Hence, this Court need not examine the subjects of the constitution or the bills' original contents to determine their subject. *Id*. at 960 (explaining when an amorphous title renders a bill's subject uncertain, but the party raises only a single subject challenge, this Court may examine either the constitution and its organized subjects or the contents of the bill as originally filed to determine the subject); *Stroh Brewery*, 954 S.W.2d at 327 (declining to examine these items to determine a bill's subject when "the title of the challenged bill is clear and certain"). Because the bills possess clear and certain titles, this Court will examine the titles to ascertain the subject, then it will determine whether the provisions contained therein relate to the subject expressed in the title.

---

[5] Even if Calzone had brought a clear title challenge, "the clear title rule necessarily applies to the version of the bill that passed, not the introduced version." *C.C. Dillon*, 12 S.W.3d at 329.

SB 638's final title stated the bill repealed several sections and enacted in lieu thereof twenty-nine new sections relating to elementary and secondary education. This title clearly states "elementary and secondary education" is the subject. This Court has held "education" comprises a broad, permissible single subject, even when the bill contained multiple provisions. *Akin*, 934 S.W.2d at 302. Hence, the circuit court properly determined SB 638's single subject was "elementary and secondary education," which is worded more narrowly than "education" as upheld in *Akin*. Further, all of the provisions contained in SB 638—concerning new curriculum offerings, programs to assist students, including those with dyslexia, reports about educational quality assurance, charter school certification and funding, school board governance, statutory bonding requirements for school district officers, and expansion of the A+ Schools Program to include nonpublic schools and provide nonpublic school students monetary benefits for postsecondary education—fairly relate to, have a natural connection with, or are incidents or means to accomplish the bill's purpose relating to elementary and secondary education.

In his reply brief, Calzone takes issue with the circuit court finding the A+ Schools Program relates to elementary and secondary education because he believes expanding this program to include nonpublic schools and postsecondary education goes beyond that single subject. This Court disagrees. SB 638 contains no language limiting its subject to *public* elementary and secondary education. Further, the A+ Schools Program provision does not regulate postsecondary education but merely expands benefits afforded *public* high school students to *nonpublic* high school students, thereby benefitting *all* secondary students. This amendment is not so incongruous or disconnected from elementary and secondary

20

education as to render the bill unconstitutional. As enacted, SB 638 does not violate the single subject requirement of article III, section 23.

SB 665's final title stated the bill repealed nine sections and enacted in lieu thereof ten new sections relating to agriculture. This title clearly states "agriculture" is the subject of the bill. All of the provisions in SB 665—concerning agricultural tax credit programs and incentives, provisions related to the AgriMissouri and Farm-to-Table programs, and amendments to the statute regulating the petroleum inspection fee—fairly relate to, have a natural connection with, or are incidents or means to accomplish the bill's purpose relating to agriculture.

In his reply brief, Calzone specifically argues the amendments to the petroleum inspection fee statute bear no relationship to agriculture. Calzone is incorrect. The department of agriculture oversees fuel regulation and conservation and carries out a variety of functions related to that oversight, including inspecting, testing, and regulating petroleum. The petroleum inspection fee statute is a means for the department of agriculture to recoup costs associated with its activities to accomplish its work related to agriculture. This Court has held amendments to bills which are used to fund or offset costs of the single subject of the legislation are a means to accomplishing the bill's purpose and do not violate article III, section 23. *Akin*, 934 S.W.2d at 302 (upholding a tax increase included in an education bill as a means to fund the education programs contained therein); *Fust*, 947 S.W.2d at 429 (holding "[i]t is sufficient that the funding mechanism is reasonably necessary to accomplish the purpose of the bill"); *cf. City of St. Charles v. State*, 165 S.W.3d 149, 151-52 (Mo. banc 2005) (upholding a prohibition to tax increment

21

financing in a bill related to emergency services as a means of limiting development in a flood plain and reducing the need for emergency services in that area); *Am. Eagle Waste Indus.*, 379 S.W.3d at 827 (holding a bill related to environmental control did not violate single subject requirement when it established administrative procedures to allow for the enforcement of those regulations, such as requiring certain fees, establishing a council to review fees, and implementing criminal penalties for improper waste disposal). This amendment is not so incongruous or disconnected from agriculture as to render the bill unconstitutional.

Calzone has failed to present clear and undoubted evidence SB 638 and SB 665 contain multiple subjects. The circuit court correctly held these bills complied with article III, section 23.

### Substantive Title Changes During the Legislative Process

Calzone argues the circuit court erred in dismissing count III in both petitions as noncognizable claims under Missouri law. In count III, Calzone alleged the substantive changes to the bills' titles during the legislative process violated article III, sections 21 and 23 because allowing substantive amendments to the bills' titles defeated the purpose of these constitutional provisions. On appeal, Calzone contends Missouri law does not prohibit him from raising this novel claim. Calzone further argues the circuit court was mistaken about this Court's precedent regarding whether the title is a component of a bill.

As stated previously, the title is not a part of the bill. *Allied Mut.*, 185 S.W.2d at 8. Because the title is not part of the bill, it may be changed as the bill progresses through the legislative process without violating any of article III's limitations. *Lincoln Credit*,

22

636 S.W.2d at 38; *Westin Crown Plaza Hotel*, 664 S.W.2d at 6; *Blue Cross Hosp.*, 681 S.W.2d at 929; *Mo. State Med. Ass'n*, 39 S.W.3d at 840.  Because Calzone concedes these claims are not a clear title challenges, which would require a different analysis, the circuit court did not err in dismissing count III of both petitions for failing to state a claim.

## Conclusion

The circuit court's judgments are affirmed.

_____
GEORGE W. DRAPER III, Chief Justice

All concur.

23